TRAVELERS INS. CO. v. NELLE.

No. 8637.

Court of Civil Appeals of Texas. Austin.

April 13, 1938.

Rehearing Denied April 27, 1938.

Renfro & Kilgore, of Dallas, for appellant.

Williams & Williams and Bauknight & Mann, all of Austin, for appellee.

McCLENDON, Chief Justice.

Suit by Nelle against appellant insurance company for a 5 per cent. ($337.50) real estate broker's commission upon the sale of a 90-acre farm. The insurance company filed an answer in the nature of a bill of interpleader alleging that one Gustafson was also claiming the commission; deposited the $337.50 in the registry of the court; and prayed that Gustafson be cited and that it be discharged of all liability and recover its costs, including a reasonable attorney's fee. Both Nelle and Gustafson excepted to this pleading. The court reserved its ruling thereon until the trial on the merits (without a jury) was concluded; at which time the court sustained the exceptions, struck out the answer of appellant, and dismissed Gustafson from the suit. Appellant then asked leave to file a formal answer (general demurrer and general denial). This was denied; and the court rendered judgment in favor of Nelle, reciting that this was done "after hearing the pleadings, the evidence and argument of counsel," and being "of opinion that the law and the facts are with the plaintiff."

At the outset the action of the court in refusing to permit a formal answer is urged as reversible error. Technically, appellant was entitled to answer to the merits when the exceptions to its pleadings were sustained. But the error in denying this right was harmless because: (1) Nelle's petition was not subject to general demurrer; and (2) the court's judgment was rendered on the facts. Had the court rendered judgment by default after striking appellant's answer, the error in refusing the request would clearly have been prejudicial. No request was made to reopen the case or to offer further testimony; and no showing was made that appellant had been prevented from fully developing its case upon the facts.

The other questions presented may be reduced to two: (1) The interpleader answer was improperly stricken; (2) the evidence was insufficient to support recovery by Nelle.

Since the allegations of the stricken answer embraced the material facts shown by the evidence, we will confine our statement to a résumé of the latter.

Nelle was a real estate broker in Austin. Thurman (the purchaser) was a farmer owning a 50-acre farm adjoining the 90 acres. All of the negotiations between appellant and Nelle were conducted by correspondence initiated by Nelle, and extended over the period from October, 1934, to September, 1935. Various offers and counter offers passed between the parties, the details of which are not material. The lowest price appellant quoted was $75 per acre ($6,750, the price at which the farm was

finally sold); and the highest price offered by Thurman was $70 per acre. September 16, 1935, Nelle wrote appellant:

"I have in recent days talked with Mr. Bud Thurman a number of times in regard to purchasing this land and on which he made a bid of $70.00 per acre last winter. Mr. Thurman thinks he has made a good offer and seems to be under the impression that if he will wait a while he will be able to buy this farm for less than $70.00 per acre because of the fact that crop conditions are not so good in Travis County this year.

"Mr. Thurman is like many other farmers in the community in thinking that if he could talk to you personally about this land and the price, that he might be able to purchase it for $70.00, or even less, and also in that way avoid a commission payment. In other words by dealing with you direct he could buy the land for at least as much less than the commission would amount to.

"The thought occurred to me that I suggest to him to make a trip to Dallas to interview you personally regarding the purchase of this land, or, if perchance one of your agents might be in the community that he call on Mr. Thurman and sound him out, and in either event try to engage him in a purchase contract. I am of the opinion that we can make a sale much quicker this way than any other in view of his attitude. I have sold him on the land time and again and he really wants the land, but is, as I have said before, trying to beat us down on the price. In view of this fact I have withheld pressing him to consider other good farms that I have for sale in the community.

"On whatever price you might agree with him on the purchase of this land, I shall expect you to protect me on the commission. Real Estate is my business, and I find that often a sale can be effected quickly when parties concerned co-operate in this way, and I feel that you will do so."

To which appellant replied September 17, 1935:

"If Mr. Thurman feels that by waiting awhile he will be able to purchase this farm for less than $70.00 per acre, I am sure he would have a long wait. Time is of no consideration to us as we can afford to hold our properties indefinitely rather than sacrifice them and, strange as it may seem, the farm income at the present time, is just about as good as we can get from most any other type of investment, so naturally we are satisfied to wait. The trend of prices are upward rather than downward regardless of the result of any one crop year. After all, one crop makes very little difference.

"We will, of course, be glad to talk to Mr. Thurman if he wants to come to Dallas, or I will be glad to refer the matter to our Mr. Stanford who comes through Austin frequently. I believe, however, that it would be better to have him come to us than for us to go to him and will ask that Mr. Stanford call at your office and that you arrange to have Mr. Thurman meet him there. We will, of course, be glad to protect you with regard to a commission if the property can be sold by you, or through you, to Mr. Thurman."

There were no further communications between appellant and Nelle. Thurman did not go to Dallas, and Stanford did not call upon Nelle. Nelle continued to try to sell the farm to Thurman. His last effort was in June, 1936.

Late in 1935 or early in 1936, Stanford suggested to Gustafson that he try to sell the farm to Thurman. The two went to see Thurman, and negotiations then begun continued until October 3, 1936, when a contract of sale was executed by appellant and Thurman. The price was $75 per acre, $1,350 cash, and the balance in 20 equal annual installments, bearing 5 per cent interest from January 1, 1937. This contract contained the following clause: "Buyer represents that he was caused to purchase the above property by the undersigned agent (Gustafson) who shall receive a commission of 5% ...... $337.50, to be paid by the seller when the entire cash consideration is paid. If the sale is not completed for any reason no commission shall be due."

The sale was consummated under this contract October 27, 1936.

The authorities are not uniform upon the question whether an owner who has listed his property with two or more brokers is entitled to implead rival claimants for a commission upon the sale. Those denying the right do so upon the ground that there is no privity of contract between the several brokers.

The contrary doctrine is thus expressed in Williams v. Parker, 129 S.C. 361, 123 S. E. 826, 828: "While there can be no doubt that the early authorities were exacting in requiring privity of same sort as an essential requisite to equitable relief by bill of interpleader, and that the statutory remedy, as a substitute for the equitable remedy, in the

kinds of action to which it applies, is governed by the same general rules, * * * in modern practice the scope of interpleading has generally been broadened and the rules governing its exercise have been made more flexible and liberal."

The cases upon the subject are collated in a note in 97 A.L.R. 1006. See, also, 8 Am.Jur., p. 1120, § 227.

The point does not seem to have been passed upon in this state; and we find it unnecessary to decide it. However, the better rule would seem to be to allow the right of interpleader where the owner has acted fairly and impartially with the several brokers. This because of the well-known custom in the real estate brokerage business of listing property with more than one broker under nonexclusive agency contracts.

 The right of interpleader was properly denied in the instant case because of the independent contract to pay Gustafson the commission. See 25 Tex.Jur. pp. 52–54, § 3, and note 16 at p. 53. Appellant contends that this was not an independent contract because based upon the express representation that Thurman "was caused to purchase the * * * property" by Gustafson. This representation does not alter the situation in so far as the right of interpleader is concerned. The contract was absolute and unconditional in its terms, and would support an action without extraneous proof. To defeat it the burden would rest upon appellant to show that the representation was false, authorizing setting the contract aside on the ground either of fraud or breach of warranty. The applicable rule is thus stated in 33 C.J. p. 439, § 22d: "Nor does the fact that plaintiff contends that his personal agreement was obtained by fraud or misrepresentation of the claimant make a case of exception to this rule."

 We also hold that the trial court's judgment is supported by ample, if not conclusive, evidence. Reduced to its final analysis, the case presented is one in which a real estate broker discovers and introduces to the owner a prospective purchaser under an express agreement to pay a commission if a sale is made "by or through" the broker; and the owner thereafter consummates a sale to the prospective purchaser. That the owner employed another agent to consummate or assist in consummating the sale, without the knowledge or consent of the broker, does not militate against the latter's right to compensation. Hancock v. Stacy, 103 Tex. 219, 125 S.W. 884. As stated, the record shows that appellant directed Gustafson to deal with Thurman, while appellant was under contract with Nelle to pay a commission if the farm could be sold by or through him. This contract contemplated that appellant would deal directly with Thurman as evidenced by Nelle's letter of September 16, 1935. It was only shortly after this that appellant, without notice to Nelle, engaged Gustafson to negotiate with Thurman. The situation was not materially different than it would have been had appellant consummated the sale without the employment of Gustafson.

While we attach no controlling effect to the fact, it should be noted that the sale was finally consummated on terms (20 years at 5 per cent. interest) much more attractive to Thurman than any suggested in the negotiations with Nelle (10 years at 6 per cent). In this connection Thurman testified: "Q. If Mr. Nelle had told you you could had it for $75.00 and twenty years at five per cent you had might as well bought it from him, is that true? A. That sounds better than six per cent and ten years. He never offered me that."

The trial court's judgment is affirmed.

Affirmed.

On Appellant's Motion for Rehearing.

 Appellant challenges the accuracy of our statement that "Stanford suggested that he (Gustafson) try to sell the farm to Thurman." It is true there was no positive evidence that Gustafson's dealings with Thurman were originally "suggested" by Stanford. Gustafson testified:

"Q. Did Mr. Stanford call you and tell you about this Johnson farm and— A. Yes, sir.

"Q. And asked you why you did not sell it—did you go to Mr. Thurman them (then) with reference to this piece of land? A. I did.

"Q. That was along late in 1935 or 1936, sometime in the winter? A. I don't think I talked to Mr. Thurman until 1936, but it could have been 1935, it was 1936 early part of 1936."

And further: "Mr. Stanford was down here and we went out to see a man at Pflugerville about a piece of land and as we were going back to town I suggested to Mr. Stanford that we go by to see Mr. Thurman, and Mr. Stanford thought that a good idea and we went by."

Taking all the circumstances in evidence, the fact that appellant did not put its agent Stanford on the stand; that Stanford never called upon Nelle as appellant had promised, although he was in Austin trying to get Gustafson to sell the land and went with him to see Thurman; that Gustafson's interests were adverse to those of Nelle, in that Gustafson was claiming that he and not Nelle was the procuring cause of the sale; we believe fully warrant the challenged statement in support of the trial court's judgment.

The motion is overruled.

Overruled.