**Daniel D. CLAYTON, Appellant,**

v.

**MONY LIFE INSURANCE COMPANY OF AMERICA, Appellee.**

No. 09–07–00527–CV.

Court of Appeals of Texas, Beaumont.

Submitted on Dec. 11, 2008.

Decided Feb. 26, 2009.

Daniel D. Clayton, Daniel D. Clayton, P.C., Beaumont, pro se.

Carl C. Scherz, W. Scott Hastings, Jeffrey A. Logan, Erik A. Marshall, Locke Lord Bissell & Liddell, LLP, Dallas, for appellee.

Before McKEITHEN, C.J., GAULTNEY and KREGER, JJ.

## OPINION

DAVID GAULTNEY, Justice.

This is an appeal from the trial court's discharge order granting an interpleader filed by MONY Life Insurance Company of America. We conclude the court did not abuse its discretion by permitting interpleader and granting a discharge related to annuity payments tendered and made in compliance with the court order. However, the trial court erred by dismissing with prejudice certain pre-interpleader claims, and considering MONY's more than two year delay in interpleading the funds, the court erred by awarding MONY attorney's fees from the annuity. We therefore affirm the discharge order in part, reverse the order in part, and re-mand the case for further proceedings consistent with this opinion.

## THE DISPUTE

In exchange for $400,000, MONY issued an annuity contract to appellant in February 2003, shortly before his divorce from Nancy Clayton. MONY made regular monthly payments to appellant under the annuity contract from March 15, 2003, to July 15, 2003.

The trial court signed the decree of divorce on June 27, 2003, and the judgment was affirmed on appeal. *See In re Marriage of Clayton,* No. 07–03–0445–CV, 2004 WL 1840453, at **1–2 (Tex.App.-Amarillo Aug. 16, 2004, no pet.) (mem.op.). The judgment provides in part that Nancy is awarded "fifty percent of MONY Annuity i/n/o husband as set out in the qualified domestic relations order to be signed by the court." The parties do not direct us to a qualified domestic relations order relating to the MONY annuity.[1] The judgment also includes a handwritten order providing that "[a]ll retirement payments awarded to a party received by other party are held in trust [and] shall be delivered to party awarded payment within 5 days."

MONY apparently learned of the divorce decree in July 2003 and stopped making payments to appellant. MONY began depositing the annuity payments into a non-interest bearing account pursuant to its own procedures.

In February 2005, appellant sued MONY, Nancy Clayton, and Jeffery Shelton (Nancy's attorney in the divorce proceeding) on contract and tort claims, all related to the annuity. MONY filed its answer and subsequently filed an amended answer asserting a plea in interpleader.

---

1. *See Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan,* — U.S. —, 129 S.Ct. 865, 172 L.Ed.2d 662 (2009).

MONY also filed an affidavit of its compliance director. The affidavit explained that the parties had not completed the appropriate paperwork to allow MONY to disburse the annuity after the divorce decree. Appellant filed a responsive pleading contesting MONY's entitlement to interpleader relief.

The trial court held a hearing to consider the interpleader and heard arguments by counsel. The compliance director's affidavit was not alluded to or admitted into evidence at the hearing. We find nothing in the record indicating any party filed a motion for summary judgment regarding any matter related to MONY's interpleader or appellant's liability claims against MONY. The only evidence offered at the hearing related to MONY's attorney's fees.

Appellant argued MONY was required to pay him the annuity on a monthly basis, and upon receiving the payment, he would pay Nancy Clayton her share. Counsel for Nancy explained that she had to seek and obtain a court order requiring the payment to her by appellant of her share of some of the annuity payments that had been paid directly to him.

MONY argued that the divorce judgment named Nancy as a fifty percent owner of the annuity, and that although appellant had signed some paperwork to effectuate that division, the paperwork had not been completed despite MONY's repeated requests. Counsel for MONY stated, "We've never gotten paperwork that allows us to do anything." MONY maintained that it was "in the middle" of the controversy.

The trial court ordered the annuity payments placed into the registry of the court, awarded MONY attorney's fees from appellant's share of those funds, and

dismissed all claims against MONY with prejudice. The trial court severed the interpleader action, making the discharge order final and appealable. Appellant asks this Court to set aside the order.

## INTERPLEADER

■ Texas has long recognized the equitable remedy of interpleader. *See Williams v. Wright,* 20 Tex. 499, 500 (1857); *Nixon v. Malone,* 100 Tex. 250, 98 S.W. 380, 384–385 (1906), *amended by* 100 Tex. 250, 99 S.W. 403 (1907).[2] Presented with conflicting claims to the stake it holds, a stakeholder who does not know which claimant to pay and fears exposure to double or multiple liability for the single stake, may apply to a court for protection. *See generally Nixon,* 98 S.W. at 384–385. By placing the fund in the control of the court pursuant to court order for the court to decide ownership, the stakeholder is relieved from the potential liability to pay the single fund more than once, and also from the litigation costs attending the rival claims. *See generally State Farm Life Ins. Co. v. Martinez,* 216 S.W.3d 799, 806–07 (Tex.2007). If a reasonable doubt exists as to the proper party to pay, the interpleader procedure allows the court to make that decision and discharge the stakeholder from that responsibility. *See id.* at 806 ("[A]n insurer should interplead [the rival claims] and let the courts decide.").

■ Today, the interpleader procedure is provided in Texas as a remedial joinder-of-parties rule. *See* TEX. R. CIV. P. 43; *see also generally* 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1702 (3d ed. 2001) (In considering similar federal rule, "[i]nterpleader should be viewed as

**2.** In *Glenn v. McCarty,* 130 Tex. 641, 110 S.W.2d 1148, 1151 (1937), the Texas Supreme Court overruled *Nixon v. Malone* on other grounds.

a remedial joinder device . . . ."). Rule 43 of the Texas Rules of Civil Procedure authorizes a party to join as defendants persons having conflicting claims against the party. *See* Tex. R. Civ. P. 43. The rival claimants may be "required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability." *Id.* As set out in Rule 43, "A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim." *Id.* A party presented with multiple claims to property in its possession may join all claimants in a lawsuit, tender the disputed property into the registry of the court, and request a discharge. *Heggy v. Am. Trading Employee Ret. Account Plan,* 123 S.W.3d 770, 775 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). The trial court decides whether interpleader is appropriate. As is true of all the rules of civil procedure, the objective of Rule 43 is to obtain a just adjudication of the litigants' rights, and toward that end, we construe the rule liberally. *See* Tex. R. Civ. P. 1.

■ Rule 43 expressly disclaims certain pre-rule restrictions imposed on interpleader practice. *See* Tex. R. Civ. P. 43. The Rule "extended and liberalized the equitable remedy of interpleader." *Downing v. Laws,* 419 S.W.2d 217, 220 (Tex.Civ. App.-Austin 1967, writ ref'd n.r.e.). Interpleader under Rule 43 requires only conflicting claims. *See* Tex. R. Civ. P. 43; *see Martinez,* 216 S.W.3d at 807. In *Martinez,* a case involving rival claims to life insurance proceeds, the Supreme Court explained as follows:

> When insurers receive notice of adverse bona fide claims, Texas law does not require them 'to act as judge and jury,' or to pay one claim and risk liability on the other. Instead, if a reasonable doubt exists in law or fact as to whom the proceeds belong, an insurer should

interplead them and let the courts decide.

*Martinez,* 216 S.W.3d at 806 (footnotes omitted). Interpleader requires the rival claimants to litigate the ownership issue among themselves, rather than with a stakeholder who has no claim to the fund and simply seeks to pay the proper claimant.

In practice, interpleader generally involves two stages. *See generally Nixon,* 98 S.W. at 382; *Sparkman v. Reliastar Life Ins. Co.,* No. 13–03–500–CV, 2008 WL 2058216, at *2 (Tex.App.-Corpus Christi May 15, 2008, pet. denied) (mem.op.) (interpleader, then trial between rival claimants). In the first stage, the court determines whether interpleader is appropriate. Generally, the stakeholder is discharged from liability to the rival claimants in the first stage of the process, and so can avoid the cost of additional litigation over the stake it once held, but to which it asserts no claim. In the second stage, after interpleader has been determined to be appropriate, the rival claimants litigate their differences. *Sparkman,* 2008 WL 2058216, at *2.

## RIVAL CLAIMS

■ To be entitled to interpleader relief, MONY had to establish that it was facing rival claims to the fund, and that a reasonable doubt existed in law or fact as to which claim was valid. *See Broesche v. Jacobson,* 218 S.W.3d 267, 277 (Tex.App.-Houston [14th Dist.] 2007, pet. denied); *see also Savs. & Profit Sharing Fund of Sears Employees v. Stubbs,* 734 S.W.2d 76, 79 (Tex.App.-Austin 1987, no writ) (Party requesting interpleader remedy has burden of proof.). Appellant argued that he is the owner of the annuity contract and that MONY refused to transfer the account. He explained he had signed a "Title Change Form," and although MONY had a

copy of that document, MONY made no change in the ownership of the annuity. On appeal, he argues there are no rival claims to the annuity, and the risk that payment of the annuity to him alone may leave MONY without a right of reimbursement is "not the kind of exposure to multiple liabilities that would justify [i]nterpleader relief."

It is undisputed that the divorce decree awarded fifty percent of the annuity to Nancy Clayton. Nevertheless, appellant asserted that the contract required MONY to make the annuity payments solely to him, with appellant then disbursing Nancy's share to her. Confronted with a divorce decree awarding Nancy a fifty percent interest in the annuity and two claimants disputing how and to whom the payments should be made, MONY was presented with rival claimants. Pursuant to Rule 43, under the circumstances MONY could "interplead them and let the courts decide." *See Martinez*, 216 S.W.3d at 806; *see also* TEX. R. CIV. P. 43.

### "REWRITING" THE CONTRACT

■ Appellant generally argues that the trial court erred in rewriting the annuity contract by changing the payee and ordering the funds paid into the registry of the court. The divorce decree divided the funds, and that judgment is final. *See Clayton*, 2004 WL 1840453, at **1–2. Payment of the tendered funds into the registry of the court followed that division of the marital estate. The trial court did not rewrite the contract in the interpleader action.

### TIMELINESS OF INTERPLEADER

Appellant argues MONY filed its interpleader late. He filed suit against MONY, Nancy Clayton, and Shelton on February 14, 2005, along with a request for disclosure and request for production of documents. MONY filed its answer on April 21, 2005, and its discovery responses and objections on May 23, 2005. On August 25, 2005, approximately six months after appellant filed suit and over two years after MONY received notice of the divorce judgment and stopped the payment of the annuity funds to appellant, MONY filed a plea in interpleader.

■ Delay in filing an interpleader does not bar a party from depositing disputed funds into the registry of the court. *Martinez*, 216 S.W.3d at 807 (citations omitted). The Supreme Court explained in *Martinez* as follows:

[I]nterpleader is not improper merely because it is delayed; while some courts have listed prompt filing as an interpleader requirement, the rules of procedure require only conflicting claims. When rival claims exist, courts must decide who gets the proceeds no matter how tardy the deposit; we cannot simply "toss the money back out the clerk's window," or return it to a stakeholder who makes no claim to it.

*Id.* (citations omitted); *see also Sparkman*, 2008 WL 2058216, at *4. MONY was presented with conflicting claims and its interpleader is not improper merely because it was delayed. *See Martinez*, 216 S.W.3d at 807.

### UNCONDITIONAL TENDER

■ Appellant argues MONY did not make an unconditional tender of the entire annuity, because MONY deposited only $61,492.23, less attorney's fees, into the court's registry, rather than $400,000. In its plea in interpleader, MONY unequivocally disclaimed any interest in the annuity proceeds that had become due. The trial court found that "at the time of the filing of the Plea in Interpleader, MONY unconditionally offered and tendered to the Court the Annuity payments which had

become due at that time, $56,937.25." The trial court also found MONY "unconditionally offered and tendered to [the] Court each additional future monthly Annuity payment of $2,277.49 as they became due until further notice from the Court."

In *Heggy,* American Trading stated in its interpleader petition that it " 'unconditionally offers and is ready to deposit with the court the remaining benefits of Robert Heggy totaling $144,251.61.' " *Heggy,* 123 S.W.3d at 776. The court held that "[a]lthough American did not physically deposit the funds into the registry of the court, it tendered the funds into the court ... [O]nly an unconditional tender, not a deposit, is required." *Id.* (citation omitted).

MONY made an unconditional tender of the annuity payments into the registry of the court for the trial court to determine who should receive the money. That unconditional tender fulfilled the purpose of interpleader. *See id.*

### INDEPENDENT CLAIMS

Appellant argues he has claims against MONY which should not have been discharged. MONY's tender did not include interest on the money it retained in its possession for over two years. Appellant's claim for interest remained in dispute. He asserted causes of action against MONY for breach of contract, fraud, and breach of fiduciary duty. Appellant argues MONY placed his share as well as Nancy's share of the annuity payments in a non-interest bearing account for two years and did not tender the annuity funds by interpleader until months after he sued MONY. According to the pleadings, the conduct giving rise to these causes of action all occurred prior to MONY's August 2005 filing of the interpleader.

Courts have sometimes held that independent liability to one of the claimants precludes interpleader; essentially,

the stakeholder was required to be "innocent." *See, e.g., Nixon,* 98 S.W. at 385; *Farmers State Bank of Meridian v. Nat'l Fire Ins. Co. of Hartford, Conn.,* 169 S.W.2d 545, 549 (Tex.Civ.App.-Waco 1943, no writ); *Travelers Ins. Co. v. Nelle,* 115 S.W.2d 988, 991 (Tex.App.-Austin 1938, writ dism'd); *see also Union Gas Corp. v. Gisler,* 129 S.W.3d 145, 153 (Tex.App.-Corpus Christi 2003, no pet.). That restriction did not survive the adoption of Rule 43, however. *See, e.g., Sparkman,* 2008 WL 2058216, at **4–5. We reach this conclusion from a reading of Rule 43 itself, and from the application of the rule in *Martinez. See Martinez,* 216 S.W.3d at 805–08.

Rule 43 requires only conflicting claims. *See* TEX. R. CIV. P. 43. Rule 43 provides that it is not grounds for objection that the rival claims "do not have a common origin or are not identical but are adverse to and independent of one another[.]" *Id.* It is also not grounds for objection that the stakeholder claims it is "not liable in whole or in part to any or all of the claimants." *Id.* This language indicates that interpleader is not precluded merely because one of the rival claimants alleges the stakeholder is also independently liable to that claimant, and the stakeholder denies that independent liability, but makes no claim to the stake. *See id.* Rule 43 expressly permits a defendant, exposed to "similar" double or multiple liability, to "obtain such interpleader by way of cross-claim or counterclaim[,]" and the Rule supplements and does not "in any way limit the joinder of parties permitted in any other rules." *Id.; see also* TEX. R. CIV. P. 40. (permissive joinder of parties). As the interpleader remedy was applied in *Martinez,* the insurer's pre-interpleader liability for statutory penalties—those penalties that were incurred before the interpleader was filed—did not preclude the filing of the

interpleader, or the effect of the tender in halting any subsequent penalties. *See Martinez,* 216 S.W.3d at 805–08.

As one author has explained in discussing the similar federal interpleader rule, "The reasons underlying the interpleader remedy continue to have force even when there is a possibility that the stakeholder also may be liable to one of the claimants on some special basis." 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1706 (3d ed. 2001); *see also Olivier v. Humble Oil & Ref. Co.,* 225 F.Supp. 536, 539 (E.D.La.1963) (discussing independent liability claims and federal interpleader rule). The possibility of independent liability may affect the final scope of the discharge order, but independent liability does not necessarily preclude the placement of the fund into the registry of the court, or the obtaining of a discharge from further liability for the payment in compliance with the court order. *See, e.g., Martinez,* 216 S.W.3d at 804–08; *Sparkman,* 2008 WL 2058216, at \*\*4–5. By unconditionally tendering the annuity payment to the court for an ownership decision, MONY gained entitlement to a discharge from the trial court of MONY's possible double liability to the rival claimants for the single fund. The court determined the amount each rival claimant should receive.

■■■■ The trial court erred, however, in dismissing with prejudice appellant's pre-interpleader liability claims against MONY, because there has been no adjudication of the merits of those claims by summary judgment motion or trial. Courts have applied interpleader to discharge parties from liability on related tort and contract claims. *See Petro Source Partners, Ltd. v. 3–B Rattlesnake Ref.,* 905 S.W.2d 371, 378 (Tex.App.-El Paso 1995, writ denied); *Cable Commc'ns Network, Inc.,* 838 S.W.2d 947, 949–51 (Tex.App.-

Houston [14th Dist.] 1992, no writ); *Salazar v. San Benito Bank & Trust Co.,* 730 S.W.2d 21 (Tex.App.-Corpus Christi 1987, no writ). However, those cases involved a summary judgment or a judgment after a trial. While independent liability does not necessarily and automatically preclude interpleader under Rule 43, liability for the independent pre-interpleader claims is not necessarily and automatically discharged by the tender.

■■■■ The hearing record does not include the annuity contract, a motion for summary judgment, or evidence concerning the claims; therefore, we do not address the merits of the pre-interpleader liability claims asserted here. The error we address is in the dismissal procedure followed. We therefore do not decide at this time whether recovery of interest on the withheld money, for the time it was withheld, is authorized in this case by contract, statute, or under principles of equity. *See, e.g., Phillips Petroleum Co. v. Stahl Petroleum Co.,* 569 S.W.2d 480, 485–89 (Tex.1978); *see also generally Phillips Petroleum Co. v. Adams,* 513 F.2d 355, 364–67 (5th Cir.1975) (discussing Texas law).

The discharge order properly discharged MONY from the potential double liability to the rival claimants for the single fund. The interpleader tender did not serve to discharge all liability claims which arose prior to the interpleader, however. Those disputed independent claims must be adjudicated by summary judgment motion or trial.

### ATTORNEY'S FEES

■■■■ "Under the common law, a stakeholder is entitled to recover its attorney's fees from the deposited funds unless there were no rival claimants or the interpleader was unreasonably delayed." *Martinez,* 216 S.W.3d at 803 (citations omitted). An award of attorney's fees to the

stakeholder from the fund is within the trial court's sound discretion. *Olmos v. Pecan Grove Mun. Util. Dist.*, 857 S.W.2d 734, 741 (Tex.App.-Houston [14th Dist.] 1993, no writ). Appellant argues an award of attorney's fees to MONY under the circumstances was improper, because MONY, having breached the contract with appellant and having violated its fiduciary duty, was not an innocent stakeholder but rather unreasonably delayed payment or tender of the funds. He asserts the deprivation of his funds caused him harm.

MONY says it learned "in or about July 2003" that the divorce decree awarded fifty percent of the annuity to Nancy Clayton. More than two years elapsed, during which time MONY retained all of the annuity payments due appellant and Nancy in a non-interest bearing account. Appellant sued MONY in February 2005. MONY did not file an interpleader action until August 2005. Nothing in the record suggests MONY offered to place the funds into the registry of the court at an earlier time.

 Delay in interpleading may be justified or reasonable under some circumstances. *See Martinez*, 216 S.W.3d at 805 ("Some delay before filing an interpleader may benefit all concerned, if settlement can be reached before lawyers must be hired and pleadings filed.") (citations omitted). However, the mere existence of an ongoing dispute involving rival claims does not, without more, justify a lengthy delay like that here; rival claims to a single fund are the reason for the existence of the interpleader procedure and not an excuse for its non-use. The record of the hearing in this case does not support an award of attorney's fees to MONY from the annuity funds in light of the delay of more than two years before MONY filed its interpleader. *See id.* at 807 ("[D]elay may bar recovery of attorney's fees[.]").

CONCLUSION

We affirm the trial court's order instructing MONY to deposit the monthly annuity payments into the registry of the court until further order of the court, and discharging MONY of further liability for payments made in compliance with the court order. We reverse the trial court's award of attorney's fees to MONY. We reverse the dismissal of the pre-interpleader independent liability claims and remand the case for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.