In The



Court of Appeals



Ninth District of Texas at Beaumont



 _________________



NO. 09-07-00527-CV


 _____________________



DANIEL D. CLAYTON, Appellant



V.



MONY LIFE INSURANCE COMPANY OF AMERICA, Appellee






On Appeal from the 58th District Court


Jefferson County, Texas


Trial Court No. B-174,198






OPINION



 This is an appeal from the trial court's discharge order granting an interpleader filed
by MONY Life Insurance Company of America. We conclude the court did not abuse its
discretion by permitting interpleader and granting a discharge related to annuity payments
tendered and made in compliance with the court order. However, the trial court erred by
dismissing with prejudice certain pre-interpleader claims, and considering MONY's more
than two year delay in interpleading the funds, the court erred by awarding MONY attorney's
fees from the annuity. We therefore affirm the discharge order in part, reverse the order in
part, and remand the case for further proceedings consistent with this opinion.

The Dispute


 In exchange for $400,000, MONY issued an annuity contract to appellant in February
2003, shortly before his divorce from Nancy Clayton. MONY made regular monthly
payments to appellant under the annuity contract from March 15, 2003, to July 15, 2003.

 The trial court signed the decree of divorce on June 27, 2003, and the judgment was
affirmed on appeal. See In re Marriage of Clayton, No. 07-03-0445-CV, 2004 WL 1840453,
at **1-2 (Tex. App.--Amarillo Aug. 16, 2004, no pet.) (mem.op.). The judgment provides
in part that Nancy is awarded "fifty percent of MONY Annuity i/n/o husband as set out in
the qualified domestic relations order to be signed by the court." The parties do not direct
us to a qualified domestic relations order relating to the MONY annuity. (1) The judgment also
includes a handwritten order providing that "[a]ll retirement payments awarded to a party
received by other party are held in trust [and] shall be delivered to party awarded payment
within 5 days." 

 MONY apparently learned of the divorce decree in July 2003 and stopped making
payments to appellant. MONY began depositing the annuity payments into a non-interest
bearing account pursuant to its own procedures. 

 In February 2005, appellant sued MONY, Nancy Clayton, and Jeffery Shelton
(Nancy's attorney in the divorce proceeding) on contract and tort claims, all related to the
annuity. MONY filed its answer and subsequently filed an amended answer asserting a plea
in interpleader. MONY also filed an affidavit of its compliance director. The affidavit
explained that the parties had not completed the appropriate paperwork to allow MONY to
disburse the annuity after the divorce decree. Appellant filed a responsive pleading
contesting MONY's entitlement to interpleader relief. 

 The trial court held a hearing to consider the interpleader and heard arguments by
counsel. The compliance director's affidavit was not alluded to or admitted into evidence
at the hearing. We find nothing in the record indicating any party filed a motion for summary
judgment regarding any matter related to MONY's interpleader or appellant's liability claims
against MONY. The only evidence offered at the hearing related to MONY's attorney's fees. 

 Appellant argued MONY was required to pay him the annuity on a monthly basis, and
upon receiving the payment, he would pay Nancy Clayton her share. Counsel for Nancy
explained that she had to seek and obtain a court order requiring the payment to her by
appellant of her share of some of the annuity payments that had been paid directly to him.

 MONY argued that the divorce judgment named Nancy as a fifty percent owner of the
annuity, and that although appellant had signed some paperwork to effectuate that division,
the paperwork had not been completed despite MONY's repeated requests. Counsel for
MONY stated, "We've never gotten paperwork that allows us to do anything." MONY
maintained that it was "in the middle" of the controversy.

 The trial court ordered the annuity payments placed into the registry of the court,
awarded MONY attorney's fees from appellant's share of those funds, and dismissed all
claims against MONY with prejudice. The trial court severed the interpleader action, making
the discharge order final and appealable. Appellant asks this Court to set aside the order. 

 Interpleader


 Texas has long recognized the equitable remedy of interpleader. See Williams v.
Wright, 20 Tex. 499, 500 (1857); Nixon v. Malone, 100 Tex. 250, 98 S.W. 380, 384-385
(1906), amended by 100 Tex. 250, 99 S.W. 403 (1907). (2) Presented with conflicting claims
to the stake it holds, a stakeholder who does not know which claimant to pay and fears
exposure to double or multiple liability for the single stake, may apply to a court for
protection. See generally Nixon, 98 S.W. at 384-385. By placing the fund in the control of
the court pursuant to court order for the court to decide ownership, the stakeholder is relieved
from the potential liability to pay the single fund more than once, and also from the litigation
costs attending the rival claims. See generally State Farm Life Ins. Co. v. Martinez, 216
S.W.3d 799, 806-07 (Tex. 2007). If a reasonable doubt exists as to the proper party to pay,
the interpleader procedure allows the court to make that decision and discharge the
stakeholder from that responsibility. See id. at 806 ("[A]n insurer should interplead [the rival
claims] and let the courts decide."). 

 Today, the interpleader procedure is provided in Texas as a remedial joinder-of-parties
rule. See Tex. R. Civ. P. 43; see also generally 7 Charles Alan Wright Et Al., Federal
Practice and Procedure § 1702 (3d ed. 2001) (In considering similar federal rule,
"[i]nterpleader should be viewed as a remedial joinder device . . . ."). Rule 43 of the Texas
Rules of Civil Procedure authorizes a party to join as defendants persons having conflicting
claims against the party. See Tex. R. Civ. P. 43. The rival claimants may be "required to
interplead when their claims are such that the plaintiff is or may be exposed to double or
multiple liability." Id. As set out in Rule 43, "A defendant exposed to similar liability may
obtain such interpleader by way of cross-claim or counterclaim." Id. A party presented with
multiple claims to property in its possession may join all claimants in a lawsuit, tender the
disputed property into the registry of the court, and request a discharge. Heggy v. Am.
Trading Employee Ret. Account Plan, 123 S.W.3d 770, 775 (Tex. App.--Houston [14th Dist.]
2003, pet. denied). The trial court decides whether interpleader is appropriate. As is true of
all the rules of civil procedure, the objective of Rule 43 is to obtain a just adjudication of the
litigants' rights, and toward that end, we construe the rule liberally. See Tex. R. Civ. P. 1. 

 Rule 43 expressly disclaims certain pre-rule restrictions imposed on interpleader
practice. See Tex. R. Civ. P. 43. The Rule "extended and liberalized the equitable remedy
of interpleader." Downing v. Laws, 419 S.W.2d 217, 220 (Tex. Civ. App.--Austin 1967, writ
ref'd n.r.e.). Interpleader under Rule 43 requires only conflicting claims. See Tex. R. Civ.
P. 43; see Martinez, 216 S.W.3d at 807. In Martinez, a case involving rival claims to life
insurance proceeds, the Supreme Court explained as follows: 

 When insurers receive notice of adverse bona fide claims, Texas law does not
require them 'to act as judge and jury,' or to pay one claim and risk liability on
the other. Instead, if a reasonable doubt exists in law or fact as to whom the
proceeds belong, an insurer should interplead them and let the courts decide.


Martinez, 216 S.W.3d at 806 (footnotes omitted). Interpleader requires the rival claimants
to litigate the ownership issue among themselves, rather than with a stakeholder who has no
claim to the fund and simply seeks to pay the proper claimant. 

 In practice, interpleader generally involves two stages. See generally Nixon, 98 S.W.
at 382; Sparkman v. Reliastar Life Ins. Co., No. 13-03-500-CV, 2008 WL 2058216, at *2
(Tex. App. -- Corpus Christi May 15, 2008, pet. denied) (mem. op.) (interpleader, then trial
between rival claimants). In the first stage, the court determines whether interpleader is
appropriate. Generally, the stakeholder is discharged from liability to the rival claimants in
the first stage of the process, and so can avoid the cost of additional litigation over the stake
it once held, but to which it asserts no claim. In the second stage, after interpleader has been
determined to be appropriate, the rival claimants litigate their differences. Sparkman, 2008
WL 2058216, at *2. 

Rival Claims


 To be entitled to interpleader relief, MONY had to establish that it was facing rival
claims to the fund, and that a reasonable doubt existed in law or fact as to which claim was
valid. See Broesche v. Jacobson, 218 S.W.3d 267, 277 (Tex. App.--Houston [14th Dist.]
2007, pet. denied); see also Savs. & Profit Sharing Fund of Sears Employees v. Stubbs, 734
S.W.2d 76, 79 (Tex. App.--Austin 1987, no writ) (Party requesting interpleader remedy has
burden of proof.). Appellant argued that he is the owner of the annuity contract and that
MONY refused to transfer the account. He explained he had signed a "Title Change Form,"
and although MONY had a copy of that document, MONY made no change in the ownership
of the annuity. On appeal, he argues there are no rival claims to the annuity, and the risk that
payment of the annuity to him alone may leave MONY without a right of reimbursement is
"not the kind of exposure to multiple liabilities that would justify [i]nterpleader relief."

 It is undisputed that the divorce decree awarded fifty percent of the annuity to Nancy
Clayton. Nevertheless, appellant asserted that the contract required MONY to make the
annuity payments solely to him, with appellant then disbursing Nancy's share to her. 
Confronted with a divorce decree awarding Nancy a fifty percent interest in the annuity and
two claimants disputing how and to whom the payments should be made, MONY was
presented with rival claimants. Pursuant to Rule 43, under the circumstances MONY could
"interplead them and let the courts decide." See Martinez, 216 S.W.3d at 806; see also Tex.
R. Civ. P. 43.

"Rewriting" the Contract


 Appellant generally argues that the trial court erred in rewriting the annuity contract
by changing the payee and ordering the funds paid into the registry of the court. The divorce
decree divided the funds, and that judgment is final. See Clayton, 2004 WL 1840453, at **1-2. Payment of the tendered funds into the registry of the court followed that division of the
marital estate. The trial court did not rewrite the contract in the interpleader action.

Timeliness of Interpleader


 Appellant argues MONY filed its interpleader late. He filed suit against MONY,
Nancy Clayton, and Shelton on February 14, 2005, along with a request for disclosure and
request for production of documents. MONY filed its answer on April 21, 2005, and its
discovery responses and objections on May 23, 2005. On August 25, 2005, approximately
six months after appellant filed suit and over two years after MONY received notice of the
divorce judgment and stopped the payment of the annuity funds to appellant, MONY filed
a plea in interpleader. 

 Delay in filing an interpleader does not bar a party from depositing disputed funds into
the registry of the court. Martinez, 216 S.W.3d at 807 (citations omitted). The Supreme
Court explained in Martinez as follows: 

 [I]nterpleader is not improper merely because it is delayed; while some courts
have listed prompt filing as an interpleader requirement, the rules of procedure
require only conflicting claims. When rival claims exist, courts must decide
who gets the proceeds no matter how tardy the deposit; we cannot simply "toss
the money back out the clerk's window," or return it to a stakeholder who
makes no claim to it. 


Id. (citations omitted); see also Sparkman, 2008 WL 2058216, at *4. MONY was presented
with conflicting claims and its interpleader is not improper merely because it was delayed.
See Martinez, 216 S.W.3d at 807. 

 Unconditional Tender


 Appellant argues MONY did not make an unconditional tender of the entire annuity, 
because MONY deposited only $61,492.23, less attorney's fees, into the court's registry,
rather than $400,000. In its plea in interpleader, MONY unequivocally disclaimed any
interest in the annuity proceeds that had become due. The trial court found that "at the time
of the filing of the Plea in Interpleader, MONY unconditionally offered and tendered to the
Court the Annuity payments which had become due at that time, $56,937.25." The trial court
also found MONY "unconditionally offered and tendered to [the] Court each additional
future monthly Annuity payment of $2,277.49 as they became due until further notice from
the Court."

 In Heggy, American Trading stated in its interpleader petition that it "'unconditionally
offers and is ready to deposit with the court the remaining benefits of Robert Heggy totaling
$144,251.61.'" Heggy, 123 S.W.3d at 776. The court held that "[a]lthough American did not
physically deposit the funds into the registry of the court, it tendered the funds into the court
. . . [O]nly an unconditional tender, not a deposit, is required." Id. (citation omitted). 

 MONY made an unconditional tender of the annuity payments into the registry of the
court for the trial court to determine who should receive the money. That unconditional
tender fulfilled the purpose of interpleader. See id.

Independent Claims


 Appellant argues he has claims against MONY which should not have been
discharged. MONY's tender did not include interest on the money it retained in its
possession for over two years. Appellant's claim for interest remained in dispute. He
asserted causes of action against MONY for breach of contract, fraud, and breach of
fiduciary duty. Appellant argues MONY placed his share as well as Nancy's share of the
annuity payments in a non-interest bearing account for two years and did not tender the
annuity funds by interpleader until months after he sued MONY. According to the pleadings,
the conduct giving rise to these causes of action all occurred prior to MONY's August 2005
filing of the interpleader. 

 Courts have sometimes held that independent liability to one of the claimants
precludes interpleader; essentially, the stakeholder was required to be "innocent." See, e.g.,
Nixon, 98 S.W. at 385; Farmers State Bank of Meridian v. Nat'l Fire Ins. Co. of Hartford,
Conn., 169 S.W.2d 545, 549 (Tex. Civ. App.--Waco 1943, no writ); Travelers Ins. Co. v.
Nelle, 115 S.W.2d 988, 991 (Tex. App.--Austin 1938, writ dism'd); see also Union Gas
Corp. v. Gisler, 129 S.W.3d 145, 153 (Tex. App.--Corpus Christi 2003, no pet.). That
restriction did not survive the adoption of Rule 43, however. See, e.g., Sparkman, 2008 WL
2058216, at **4-5. We reach this conclusion from a reading of Rule 43 itself, and from the
application of the rule in Martinez. See Martinez, 216 S.W.3d at 805-08. 

 Rule 43 requires only conflicting claims. See Tex. R. Civ. P. 43. Rule 43 provides
that it is not grounds for objection that the rival claims "do not have a common origin or are
not identical but are adverse to and independent of one another[.]" Id. It is also not grounds
for objection that the stakeholder claims it is "not liable in whole or in part to any or all of
the claimants." Id. This language indicates that interpleader is not precluded merely because
one of the rival claimants alleges the stakeholder is also independently liable to that claimant,
and the stakeholder denies that independent liability, but makes no claim to the stake. See
id. Rule 43 expressly permits a defendant, exposed to "similar" double or multiple liability,
to "obtain such interpleader by way of cross-claim or counterclaim[,]" and the Rule
supplements and does not "in any way limit the joinder of parties permitted in any other
rules." Id.; see also Tex. R. Civ. P. 40. (permissive joinder of parties). As the interpleader
remedy was applied in Martinez, the insurer's pre-interpleader liability for statutory penalties
-- those penalties that were incurred before the interpleader was filed -- did not preclude the
filing of the interpleader, or the effect of the tender in halting any subsequent penalties. See
Martinez, 216 S.W.3d at 805-08. 

 As one author has explained in discussing the similar federal interpleader rule, "The
reasons underlying the interpleader remedy continue to have force even when there is a
possibility that the stakeholder also may be liable to one of the claimants on some special
basis." 7 Charles Alan Wright Et Al., Federal Practice and Procedure § 1706 (3d
ed. 2001); see also Olivier v. Humble Oil & Ref. Co., 225 F. Supp. 536, 539 (E.D. La. 1963)
(discussing independent liability claims and federal interpleader rule). The possibility of
independent liability may affect the final scope of the discharge order, but independent
liability does not necessarily preclude the placement of the fund into the registry of the court,
or the obtaining of a discharge from further liability for the payment in compliance with the
court order. See, e.g., Martinez, 216 S.W.3d at 804-08; Sparkman, 2008 WL 2058216, at
**4-5. By unconditionally tendering the annuity payment to the court for an ownership
decision, MONY gained entitlement to a discharge from the trial court of MONY's possible
double liability to the rival claimants for the single fund. The court determined the amount
each rival claimant should receive.

 The trial court erred, however, in dismissing with prejudice appellant's pre-interpleader liability claims against MONY, because there has been no adjudication of the
merits of those claims by summary judgment motion or trial. Courts have applied
interpleader to discharge parties from liability on related tort and contract claims. See Petro
Source Partners, Ltd. v. 3-B Rattlesnake Ref., 905 S.W.2d 371, 378 (Tex. App.--El Paso
1995, writ denied); Cable Commc'ns Network, Inc., 838 S.W.2d at 947, 949-51 (Tex. App.--Houston [14th Dist.] 1993, no writ); Salazar v. San Benito Bank & Trust Co., 730 S.W.2d
21 (Tex. App.--Corpus Christi 1987, no writ). However, those cases involved a summary
judgment or a judgment after a trial. While independent liability does not necessarily and
automatically preclude interpleader under Rule 43, liability for the independent pre-interpleader claims is not necessarily and automatically discharged by the tender. 

 The hearing record does not include the annuity contract, a motion for summary
judgment, or evidence concerning the claims; therefore, we do not address the merits of the
pre-interpleader liability claims asserted here. The error we address is in the dismissal
procedure followed. We therefore do not decide at this time whether recovery of interest on
the withheld money, for the time it was withheld, is authorized in this case by contract,
statute, or under principles of equity. See, e.g., Phillips Petroleum Co. v. Stahl Petroleum
Co., 569 S.W.2d 480, 485-89 (Tex. 1978); see also generally Phillips Petroleum Co. v.
Adams, 513 F.2d 355, 364-67 (5th Cir. 1975) (discussing Texas law). 

 The discharge order properly discharged MONY from the potential double liability
to the rival claimants for the single fund. The interpleader tender did not serve to discharge
all liability claims which arose prior to the interpleader, however. Those disputed
independent claims must be adjudicated by summary judgment motion or trial. 

 Attorney's Fees 


 "Under the common law, a stakeholder is entitled to recover its attorney's fees from
the deposited funds unless there were no rival claimants or the interpleader was unreasonably
delayed." Martinez, 216 S.W.3d at 803 (citations omitted). An award of attorney's fees to
the stakeholder from the fund is within the trial court's sound discretion. Olmos v. Pecan
Grove Mun. Util. Dist., 857 S.W.2d at 734, 741 (Tex. App.--Houston [14th Dist.] 1993, no
writ). Appellant argues an award of attorney's fees to MONY under the circumstances was
improper, because MONY, having breached the contract with appellant and having violated
its fiduciary duty, was not an innocent stakeholder but rather unreasonably delayed payment
or tender of the funds. He asserts the deprivation of his funds caused him harm. 

 MONY says it learned "in or about July 2003" that the divorce decree awarded fifty
percent of the annuity to Nancy Clayton. More than two years elapsed, during which time
MONY retained all of the annuity payments due appellant and Nancy in a non-interest
bearing account. Appellant sued MONY in February 2005. MONY did not file an
interpleader action until August 2005. Nothing in the record suggests MONY offered to
place the funds into the registry of the court at an earlier time. 

 Delay in interpleading may be justified or reasonable under some circumstances. See
Martinez, 216 S.W.3d at 805 ("Some delay before filing an interpleader may benefit all
concerned, if settlement can be reached before lawyers must be hired and pleadings filed.")
(citations omitted). However, the mere existence of an ongoing dispute involving rival
claims does not, without more, justify a lengthy delay like that here; rival claims to a single
fund are the reason for the existence of the interpleader procedure and not an excuse for its
non-use. The record of the hearing in this case does not support an award of attorney's fees
to MONY from the annuity funds in light of the delay of more than two years before MONY
filed its interpleader. See id. at 807 ("[D]elay may bar recovery of attorney's fees[.]").

Conclusion


 We affirm the trial court's order instructing MONY to deposit the monthly annuity
payments into the registry of the court until further order of the court, and discharging
MONY of further liability for payments made in compliance with the court order. We
reverse the trial court's award of attorney's fees to MONY. We reverse the dismissal of the
pre-interpleader independent liability claims and remand the case for further proceedings
consistent with this opinion. 

 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.


 ___________________________

 DAVID GAULTNEY

 Justice


Submitted on December 11, 2008

Opinion Delivered February 26, 2009


Before McKeithen, C.J., Gaultney and Kreger, JJ






1. See Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan, No. 07-636, 2009 U.S.
LEXIS 869 (Jan. 26, 2009). 
2. In Glenn v. McCarty, 130 Tex. 641, 110 S.W.2d 1148, 1151 (1937), the Texas
Supreme Court overruled Nixon v. Malone on other grounds.