**Opinion issued March 27, 2025**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00190-CV

_____

**RSL FUNDING, LLC, RSL SPECIAL-IV, LTD., AND MARLA B. MATZ, ON THEIR OWN BEHALF AND AS ASSIGNEES OF CHEVEZE PIPPINS, DANIEL MORRIS, AND DONNA O'BRIEN N/K/A DONNA GLYNN,**
Appellants

V.

**METROPOLITAN LIFE INSURANCE COMPANY, METLIFE INSURANCE COMPANY OF CONNECTICUT N/K/A BRIGHTHOUSE LIFE INSURANCE COMPANY, METLIFE INVESTORS USA INSURANCE COMPANY N/K/A BRIGHTHOUSE LIFE INSURANCE COMPANY, AND BRIGHTHOUSE LIFE INSURANCE COMPANY,**
Appellees

---

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-72341**

---

**O P I N I O N**

This long-running dispute, which we can narrow but cannot completely end, arises out of the attempted assignment and sale of four annuities. In 2010 and 2011, Cheveze Pippins, Daniel Morris, and Donna O'Brien (collectively, "the Individuals") assigned their rights under four different annuities to RSL Funding, LLC and RSL Special-IV, Ltd., which then assigned its rights to Marla B. Matz (collectively, "the RSL parties"). However, the assignment effort sparked an objection by the annuity issuers. Those issuers—Metropolitan Life Insurance Company, MetLife Insurance Company of Connecticut *n/k/a* Brighthouse Life Insurance Company, and MetLife Investors USA Insurance Company *n/k/a* Brighthouse Life Insurance Company (collectively, "the MetLife parties")—insisted that any assignment or transfer of rights would run afoul of anti-assignment language in the contracts.

Over the next eleven years, the parties engaged in litigation in the county courts of Harris County, the district courts of Harris County, the Fourteenth Court of Appeals, the Texas Supreme Court, the Southern District of Texas, and in arbitration. In 2022, the district court granted the MetLife parties' motion for summary judgment on their claim for interpleader relief. The district court also made declarations in favor of both the RSL parties and the MetLife parties on the assignability and ownership of the four annuities. Following a bench trial primarily

2

focused on attorney's fees, the district court awarded the MetLife parties attorney's fees on their claims for interpleader and declaratory relief, and it also awarded the RSL parties attorney's fees for defending the declaratory claims. The court also ordered the MetLife parties to make all future payments under two of the annuities to Matz.

On appeal, the RSL parties present nine appellate issues: (1) the final judgment is erroneous due to a fatal defect in parties; (2) no evidence proves that Brighthouse is a successor in interest to MetLife Connecticut and MetLife Investors and could therefore prosecute the litigation on their behalf; (3) Brighthouse did not properly become a party to the litigation; (4) the final judgment varies from the live pleadings at trial; (5) the trial court erred by granting summary judgment in favor of the MetLife parties on their claim for interpleader relief; (6) the MetLife parties did not qualify as innocent and disinterested stakeholders such that the court could award them interpleader relief and attorney's fees; (7) the MetLife parties did not properly segregate their recoverable and unrecoverable attorney's fees; (8) the trial court abused its discretion by denying the RSL parties attorney's fees that they had incurred in prior litigation; and (9) the trial court abused its discretion by holding all three RSL parties jointly and severally liable for the MetLife parties' attorney's fees and costs.

We modify the judgment in part, reverse and remand in part, and affirm the remainder of the judgment as modified.

## Background

### A. The Issuance and Attempted Sale of the Annuities

The question at the heart of this dispute is the ownership of four annuities that had been issued to different individuals by different entities in the MetLife family of companies.

*#1. The Pippins Annuity.* In 1992, MetLife Insurance Company of Connecticut ("MetLife Connecticut") issued an annuity to Cheveze D. Pippins. This annuity guaranteed payments of $350 per month for twenty years—from April 1992 through March 2012—plus monthly installments for the remainder of Pippins' life.

*#2 and #3. The O'Brien Annuities.* In 2006, MetLife issued two annuities to Donna M. O'Brien, one of which was a "Traditional IRA" annuity ("the IRA annuity") and the other of which was a "Non-Qualified" annuity ("the non-IRA annuity"). Both annuities gave O'Brien the option to elect receipt of "income payments," or payments of a guaranteed amount over a specific time period. In March 2009, O'Brien informed MetLife of her desire to begin receiving income payments under both annuities. MetLife issued two supplementary agreements that set out the terms of the income payments. Under the IRA annuity, MetLife agreed to pay O'Brien $947.60 per month for five years, with the payments ending on

4

March 11, 2014. Under the non-IRA annuity, MetLife agreed to pay O'Brien $1,130.20 per month for five years until March 11, 2014.

*#4. The Morris Annuity.* In 2008, MetLife Investors USA Insurance Company ("MetLife Investors") issued an annuity to Daniel P. Morris. This annuity guaranteed Morris monthly payments of $454.61 for twenty years, with payments stopping on March 17, 2028. MetLife Investors did not agree to make any payments beyond this twenty-year period.

Each of the four annuities contained different terms regarding whether ownership of the annuities and payments under the annuities could be assigned. In 2010 and 2011, the Individuals all attempted to assign their annuities and the income streams from those annuities to RSL Funding, a company that purchases annuities and payment rights in exchange for a lump-sum payment to the owner of the annuity. The Individuals signed substantively identical assignment agreements in which they agreed to sell, assign, and transfer all their rights, title, and interest to certain payments under the annuities to RSL Funding.[1] They also signed bills of sale irrevocably granting their right, title, and interest under the annuities to RSL Special.

---

[1] In exchange for a lump-sum payment of $20,400, Pippins assigned 15 monthly payments of $350 beginning January 2011 through March 2012 and 165 payments of $325 beginning April 2012 through December 2025. In exchange for a $40,000 payment, Morris assigned 205 monthly payments of $464.61 beginning March 2011 through March 2028. In exchange for a $32,000 payment, O'Brien assigned 25 monthly payments of $1,130.20 and 25 monthly payments of $947.60 beginning March 2012 through March 2014.

5

RSL Special assigned its rights under the bills of sale to Matz, who is married to the principal officer of RSL Funding.

**B.    The Commencement of the County Court Action and the First Appeal**

Over the course of several months following the signing of the assignment agreements and bills of sale, the RSL parties negotiated with the MetLife parties to effectuate the change in ownership over the annuities. The MetLife parties refused to make the changes, primarily pointing to language in each of the annuities that, they contended, prohibited the Individuals from assigning their ownership and payment rights.[2]

**1.    RSL Funding sues two groups of defendants**

In June 2011, RSL Funding sued the Individuals and the MetLife parties in the Harris County civil courts at law. RSL Funding sought declarations that (1) the assignment agreements and bills of sale that it and the Individuals signed were valid and binding on all parties, and (2) the MetLife parties must make the monthly payments under the annuities to RSL Funding or its assignee. RSL Funding also alleged that the MetLife parties had breached the four annuity policies by failing to make the monthly payments under the annuities to RSL Funding's assignee. RSL

---

[2]    Specifically with respect to O'Brien's annuities, MetLife informed the RSL parties that O'Brien "does have the right to instruct MetLife as to where payments are to be sent," so if O'Brien instructed MetLife in writing to send her monthly payments to RSL Funding, MetLife would do so. However, O'Brien would retain the right to revoke such an arrangement, and MetLife "would accept no liability if Ms. O'Brien sent subsequent instruction changing that direction and RSL failed to get payments."

Funding later amended this petition to name RSL Special and Matz as its assignees. In its amended petition, RSL Funding sought declarations that (1) Matz or RSL Special owned the annuities and held the right to receive monthly payments from the annuities, and (2) the MetLife parties could not legally or contractually refuse to pay the monthly payments to Matz or RSL Special. RSL Funding also requested attorney's fees.

With ownership in dispute, the RSL parties did not make lump-sum payments to the Individuals. Frustrated by the delay in payments, Pippins and Morris both tried to terminate their agreements with the RSL parties and assign their payment rights under the annuities to third party companies. Ultimately, in light of the pending litigation, the MetLife parties did not change the ownership of these two annuities or send payments to the third parties identified by Pippins and Morris.

### 2. The MetLife parties file counterclaims

The MetLife parties filed a counterclaim for declaratory relief and a cross-claim for interpleader in September 2011. They requested that the county court allow them to deposit the monthly payments under the annuities into the registry of the court, require the Individuals and the RSL parties to "interplead their claims to such payments," and discharge the MetLife parties from liability with respect to the payments. The MetLife parties also sought several declarations, including whether the terms of the annuities permit the Individuals to assign the annuities to the RSL

7

parties and whether the RSL parties can become owners of the annuities. The MetLife parties further requested that the county court adjudicate who is entitled to the monthly payments under the annuities "and thereafter award such payments to the party legally entitled to receive them." The MetLife parties sought reasonable and necessary attorney's fees and costs, "whether from the interpled funds or otherwise."

Shortly after the MetLife parties filed their counterclaim seeking declaratory and interpleader relief, the county court *sua sponte* ordered the MetLife parties to deposit into the registry of the court "any and all payments that they are currently holding on the annuities" issued to the Individuals "and in which RSL is claiming an interest." The county court further ordered the MetLife parties to deposit all future payments under the annuities into the court's registry "as and when they come due."

### 3.    The Individuals file their own claims

The Individuals also filed claims against the RSL parties and the MetLife parties. Against the MetLife parties, they asserted claims for breach of the duty of good faith and fair dealing, breach of fiduciary duty, and breach of the annuity contracts. Against the RSL parties, they asserted a claim for breach of the assignment agreements, alleging that the RSL parties failed to pay them the lump-sum payments contractually required by those agreements. The Individuals asserted that their damages from the RSL parties' alleged breaches of the assignment agreements

8

exceeded the jurisdictional limits of the county court, and they sought a contemporaneous transfer of their claims to the Harris County district courts.

The county court denied the Individuals' motion to transfer the case to district court. Following this ruling, both the Individuals and the RSL parties nonsuited their affirmative claims in county court and re-filed in the Harris County district courts. MetLife's claims for interpleader and declaratory relief remained pending in the county court, as did the RSL parties' request for attorney's fees.

### 4.     The arbitration detour

RSL Funding—but not RSL Special or Matz—initiated an arbitration proceeding against the Individuals and moved to stay the county court case pending arbitration. The county court denied this motion and signed an order staying the arbitration proceeding. RSL Funding filed an interlocutory appeal of these orders. Ultimately, both the Fourteenth Court of Appeals and the Texas Supreme Court affirmed the county court's orders. *See RSL Funding, LLC v. Pippins*, 424 S.W.3d 674 (Tex. App.—Houston [14th Dist.] 2014), *aff'd*, 499 S.W.3d 423 (Tex. 2016) (per curiam). The Fourteenth Court held that RSL Funding waived its right to arbitration by substantially invoking the litigation process. *Id.* at 685–87. The court also noted that in opposing RSL Funding's attempt to compel arbitration, the Individuals had argued that arbitration would not resolve the issues before the county court in part because RSL Special—who had purchased the annuity rights from the

Individuals—and Matz—who purportedly owned the annuity rights via assignments from RSL Special—were not parties to the arbitration proceeding. *Id.* at 687 n.24. RSL Funding did not challenge this ground on appeal, and therefore this ground provided an alternative basis to affirm the county court's orders. *Id.*

The Texas Supreme Court disagreed that RSL Funding had waived its right to arbitrate by substantially invoking the litigation process. *See RSL Funding*, 499 S.W.3d at 434. However, it agreed with the Fourteenth Court that RSL Funding's failure to challenge a ground on which the county court could have based its decision to deny RSL Funding's motions—RSL Funding had failed to join RSL Special and Matz as parties to the arbitration proceeding—provided a basis to affirm the county court's orders. *Id.*

**C.    The Arbitration, the Trial in the County Court, and the Second Appeal**

After RSL Funding's interlocutory appeal concluded and the case resumed in county court, RSL Funding—this time joined by RSL Special and Matz—again initiated an arbitration proceeding against the Individuals. This arbitration occurred, albeit without the participation of the Individuals at the final hearing. The MetLife parties were not parties to this arbitration proceeding.

**1.    The arbitration award between the RSL parties and the Individuals**

The final arbitration award resolved all pending claims between the RSL parties and the Individuals. The arbitrator found that "the annuities and all present

10

and future rights related thereto" belonged to the RSL parties. The arbitrator construed the language of the four annuities and found that none of the annuities contained any provisions that precluded the Individuals from transferring ownership and payment rights to RSL Funding and RSL Special. The arbitrator further found that each of the Individuals had breached their respective contracts with the RSL parties. The arbitrator ruled in favor of the RSL parties on their claims for breach of contract and awarded the RSL parties all funds on deposit in the county court's registry, as well as "all further or future amounts on deposit arising out of these same annuities or streams of income."

The arbitrator also ordered the Individuals to pay nearly $400,000 in attorney's fees to the RSL parties. However, in recognition of the Individuals' financial situation and the likelihood that they did not have the resources to pay a damages award to the RSL parties, the arbitrator awarded and transferred to the RSL parties "all choate and inchoate rights, asserted and unasserted, known and unknown, of any kind whatsoever, that [the Individuals] may possess and can exercise against" the MetLife parties "arising out of or relating to the annuities at issue and the agreements by and between the parties herein." The arbitrator allowed the RSL

parties to "seek actions in the name and stead of the [Individuals], as well as in the [RSL parties'] names."[3]

The RSL parties sought confirmation of the arbitration award in both federal court—with respect to Morris and O'Brien—and state court—with respect to Pippins. In April 2017, the Southern District of Texas confirmed the arbitration award against Morris and O'Brien. In September 2017, the 165th District Court of Harris County did the same against Pippins.

Following confirmation of the arbitration award, the RSL parties filed a suggestion of mootness and a plea to the jurisdiction in the county court.[4] In October 2017, the county court granted the RSL parties' plea to the jurisdiction and dismissed with prejudice the MetLife parties' claims for interpleader and declaratory relief. The county court also dismissed the MetLife parties' request for attorney's fees but

---

[3]     Throughout the arbitration award, the arbitrator frequently made findings relevant to the MetLife parties. For example, the arbitrator found that MetLife has agreed to assignments of annuities in the past, even in transactions involving RSL Funding and other similarly situated companies. The arbitrator further found that the Individuals and the RSL parties "probably have a claim against MetLife in connection with the conduct described herein by the agents of the various MetLife companies in connection with the assignability of these annuities."

[4]     When RSL Funding originally filed suit in county court in June 2011, the case was assigned to the County Civil Court at Law Number 4. Six years later, RSL Special and Matz moved to recuse the county court judge. The county court judge voluntarily recused herself in June 2017. The local administrative judge assigned the case to the County Civil Court at Law Number 1, and the presiding judge of that court signed the remainder of the orders over the next four years while the case remained pending in county court.

ruled that the RSL parties' request for attorney's fees remained pending. The county court also signed an order disbursing all funds in the registry of the court—$118,992.73—to Matz and directing the MetLife parties to make all future payments under the annuities directly to Matz.

## 2. The jury trial in county court on attorney's fees

In July 2018, the county court held a jury trial on the amount of the RSL parties' attorney's fees for defending against the MetLife parties' declaratory judgment claim. By the time of that trial, MetLife Connecticut and MetLife Investors had merged, changed its name to "MetLife Insurance Company USA," and changed its name again to "Brighthouse Life Insurance Company." The jury charge defined "MetLife Parties" as MetLife, MetLife Connecticut, and MetLife Investors and noted that "[a]fter a recent reorganization, MetLife [Connecticut] and MetLife [Investors] are now known as Brighthouse Life Insurance Company."

The county court jury awarded the RSL parties $435,077.75 in trial-level attorney's fees plus $160,000 in conditional appellate attorney's fees. The county court rendered a final judgment that, among other things, dismissed the interpleader and declaratory judgment claims of the MetLife parties—defined to include Brighthouse—and ordered the MetLife parties to pay the RSL parties' trial-level and conditional appellate attorney's fees.

### 3. The appeal by the MetLife parties

MetLife and Brighthouse appealed. In concluding that the arbitration between the RSL parties and the Individuals had not mooted the MetLife parties' claims for interpleader and declaratory relief, the Fourteenth Court noted that the MetLife parties' declaratory judgment claim was based on the presence of purported anti-assignment clauses in the annuities. *See Metro. Life Ins. Co. v. RSL Funding, LLC*, No. 14-19-00155-CV, 2021 WL 330447, at *4 (Tex. App.—Houston [14th Dist.] Feb. 2, 2021, no pet.) (mem. op.). The arbitration proceeding could not have resolved this claim because the MetLife parties were not parties to the arbitration or to the actions confirming the arbitration award. *Id.*

The Fourteenth Court also concluded that if a party seeks attorney's fees under the Declaratory Judgments Act—as the MetLife parties did—a trial court should not dismiss the declaratory judgment claim as moot "even if the declaration itself would provide no future relief other than to determine which party prevailed." *Id.* at *5. The extent that the parties prevailed in the declaratory judgments action is a factor to consider in awarding attorney's fees under that act. *Id.*

Additionally, the MetLife parties had requested attorney's fees in connection with their interpleader action. *Id.* The arbitration proceeding "may have resolved among the [Individuals] and RSL their rights to bring claims against MetLife and to claim the interpleaded funds," such that MetLife "may no longer be subject to rival

14

claims for the annuity payments if only RSL's claims remain after the arbitration." *Id.* But the resolution of this dispute between the RSL parties and the Individuals "does not moot the interpleader action because MetLife requested attorney's fees." *Id.* Ultimately, the Fourteenth Court held that the county court erred by granting the RSL parties' plea to the jurisdiction and dismissing the MetLife parties' declaratory judgment claim, interpleader claim, and request for attorney's fees as moot. *Id.* The court also reversed the award of attorney's fees to the RSL parties and remanded that issue to the county court for reconsideration. *Id.*

After the case returned to county court, MetLife and Brighthouse moved to release the supersedeas bonds filed in connection with their appeal, deposit into the court's registry the payments under the annuities that had accrued during the pendency of the appeal, and compel Matz to return the amounts that had been disbursed to her in October 2017. In responding to and opposing this motion, the RSL parties acknowledged that Brighthouse "(as successor to MetLife Insurance Company of Connecticut and MetLife Investors USA Insurance Company)" had joined MetLife in filing the request. The county court released MetLife, Brighthouse, and their sureties from any liability under their supersedeas bonds. The county court also ordered Brighthouse to deposit into the court's registry all payments under the annuities that had accrued during the pendency of the appeal, as well as any future

15

payments as they came due. The court did not order Matz to return the payments that had been disbursed to her.

MetLife and Brighthouse also moved for partial summary judgment on their claims for declaratory relief and interpleader. The RSL parties—again acknowledging Brighthouse and its successor status—opposed MetLife and Brighthouse's summary judgment motion and filed their own traditional and no-evidence summary judgment motion. The county court denied both summary judgment motions.

**D.    The Underlying Proceeding in District Court**

The proceeding underlying this appeal began in November 2011, when the Individuals nonsuited their claims in county court and sued MetLife, MetLife Connecticut, MetLife Investors, and RSL Funding in Harris County district court. The Individuals asserted claims against the MetLife parties for breach of the duty of good faith and fair dealing, breach of fiduciary duty, and breach of contract arising out of the MetLife parties' failure to recognize the Individuals' sales of their annuities to the RSL parties. The Individuals asserted a breach of contract claim against RSL Funding, alleging that RSL Funding breached each of its contracts with the Individuals when it did not pay them the lump-sum payments required by the assignment and bill of sale documents.

RSL Funding filed a cross-claim against the MetLife parties on its own behalf and "as special servicing agent for and on behalf of" RSL Special and Matz. RSL Funding sought a declaration that RSL Special or Matz owned each of the four annuities, which would entitle them to receive monthly payments from the MetLife parties under the annuities. RSL Funding further requested that the court decide whether the MetLife parties could legally or contractually refuse to pay the monthly payments under the annuities to RSL Special or Matz. RSL Funding also brought a breach of contract claim against the MetLife parties, alleging that RSL Special or Matz stood in the shoes of the Individuals, and the MetLife parties breached their obligations under the annuities when they failed to make monthly payments. RSL Funding sought attorney's fees under both the Declaratory Judgments Act and Civil Practice and Remedies Code Chapter 38.

The MetLife parties moved to abate or dismiss the proceeding in the district court, arguing that an action was already pending in the county court that involved all the same parties as in the district court. The county court had therefore acquired dominant jurisdiction over the dispute. The district court agreed with the MetLife parties and abated the case in March 2012.

## 1. The MetLife merger

This case remained abated for more than ten years while the parties litigated in other forums. The RSL parties twice moved to reinstate the case—once in 2016 and once in 2018—but the district court denied the motion both times.

While the district court was considering whether to reinstate this case in 2018, the MetLife parties filed a brief arguing that the case should be dismissed. Relevant to this appeal, the brief included the following footnote after identifying each of the MetLife parties:

> Effective November 14, 2014, MetLife Insurance Company of Connecticut and MetLife Investors USA Insurance Company merged, retaining the name MetLife Insurance Company of Connecticut. Effective the same day, MetLife Insurance Company of Connecticut was renamed MetLife Insurance Company USA. Effective March 6, 2017, MetLife Insurance Company USA was renamed Brighthouse Life Insurance Company.

This is the first mention of Brighthouse in a filing before the district court that is part of the appellate record.

Over the next four years, the district court occasionally sent notices of its intent to dismiss the case for want of prosecution and requested status reports from the RSL parties. Following one such status report in 2019, the district court signed an order retaining the case on its docket. In this order, the district court noted that it had considered the RSL parties' status report as well as "the response filed by Metropolitan Life Insurance Company and Brighthouse Life Insurance Company."

18

Brighthouse continued to come up in court filings. For example, in another status report filed in May 2022, RSL Funding noted that it had brought "cross-claims against the co-defendants, Metropolitan Life Insurance Company and Brighthouse Life Insurance Company, as successor to MetLife Insurance Company of Connecticut and MetLife Investors USA Insurance Company ('MetLife Parties')."

At some point in summer 2022, the county court case was transferred to the Harris County district courts. In August 2022, the RSL parties and the MetLife parties filed a joint motion to consolidate the transferred county court case and the district court case. This motion identified the parties as "Defendants Metropolitan Life Insurance Company and Brighthouse Life Insurance Company" and "Defendant[s] RSL Funding, LLC . . . RSL Special-IV, Ltd., and Marla Matz Feldman." The district court granted this motion, consolidated the cases, and set the consolidated case for trial in September 2022.

Shortly after, MetLife and Brighthouse moved for partial summary judgment. With respect to their interpleader claim, the MetLife parties argued that they faced—or had grounds to anticipate—competing claims to the payments under each of the annuities; they did not unreasonably delay seeking interpleader relief; they unconditionally tendered the annuity payments; and waiver and estoppel barred the RSL parties' challenges to the interpleader claim. With respect to their claim for declaratory relief, the MetLife parties argued that each of the annuities contained

19

valid and enforceable anti-assignment provisions, and therefore the Individuals were unable to transfer their ownership and payment rights in the annuities to the RSL parties. The MetLife parties further argued that they were entitled to attorney's fees on both claims, "with the amount of such award to be determined by stipulation or through a jury trial."

The RSL parties also moved for traditional and no-evidence summary judgment, requesting a declaration that Matz owned the annuity that MetLife Connecticut had issued to Pippins. The motion included the following footnote: "In a subsequent corporate reorganization, MetLife Connecticut became part of Brighthouse Life Insurance Co. This motion will continue to refer to the annuity issuer as MetLife Connecticut, with the understanding that all its liabilities and obligations passed to Brighthouse Life Insurance Co." Substantively, the RSL parties argued that no provision in the annuity contract between MetLife Connecticut and Pippins prohibited him from selling the annuity or his ownership rights, changing owners of the annuity, or otherwise conveying the income stream from the annuity.

Although the RSL parties maintain on appeal that Brighthouse was not a proper party to this case, they asked the district court to make Brighthouse a defendant. Specifically, the RSL parties moved to realign the parties following consolidation of the county and district court cases, and it also requested that the

district court allow repleading in the parties' new capacities. RSL Funding, RSL Special, and Matz requested that the district court "realign themselves as plaintiffs going forward" and realign "Metropolitan Life Insurance Company and Brighthouse Life Insurance Company ('MetLife Parties'), as defendants." The MetLife parties opposed this relief and attached supporting exhibits. One of these exhibits is the RSL parties' fifth amended responses to the MetLife parties' request for disclosure, which the RSL parties served in August 2022. In their responses, the RSL parties listed "Brighthouse Life Insurance Company" as one of the parties to the lawsuit.[5]

The district court held a pretrial conference over two days in September 2022. During this conference, the court made several rulings related to the Individuals' abilities to assign their ownership and payment rights under the annuities. The court ruled that Pippins had the right to assign his interest in the annuity to whomever he

---

[5] One week before the trial date and before the district court ruled on the RSL parties' motion to realign and allow repleading, the RSL parties filed an amended cross-claim and amended original petition as assignees of the Individuals. In this amended petition, the RSL parties sought to "amend their pleadings complaining about cross-defendants Metropolitan Life Insurance Company and Brighthouse Life Insurance Company (as ultimate successor to [MetLife Connecticut] and [MetLife Investors])." The amended filing "also confirms that the RSL Parties succeeded, *via* assignment made by a confirmed arbitral award," to the causes of action originally brought by the Individuals. The RSL parties stated: "Defendant Brighthouse Life Insurance Company, as ultimate successor to MetLife Connecticut and MetLife Investors, has appeared." In addition to their existing claims for declaratory relief and breach of contract, the RSL parties added new claims for tortious interference with contract, fraud, and fraudulent inducement. The MetLife parties moved to strike this amended filing, arguing that the addition of new claims was without leave of court and constituted a surprise. The court granted the motion to strike.

chose. The court also ruled that although O'Brien could not assign, transfer, or sell ownership of or payment under her IRA annuity, she could change ownership of her non-IRA annuity but could not assign the payments from that annuity. The court further ruled that Morris could not assign ownership or payment rights under his annuity. One of the issues that remained for trial was whether the MetLife parties breached the terms of the Pippins annuity and the O'Brien non-IRA annuity.

## 2.    The trial in the district court

On the first day of trial, the district court signed an order granting the MetLife parties' summary judgment motion with respect to their entitlement to interpleader relief. The court also discharged the MetLife parties "from all liability to any other party to this action with respect to the annuity payments [the MetLife parties] have paid, whether into the Court's registry or directly to Matz, since September 2011 . . . ." The court also partially granted the RSL parties' motion to realign the parties and replead, designating the Individuals and RSL parties as plaintiffs and the "Annuity Issuers"—defined as MetLife and Brighthouse—as defendants. The court denied the RSL parties' request to replead.

The parties stipulated to some facts relating to the Pippins annuity and O'Brien non-IRA annuity at trial. After the district court heard argument relating to whether the MetLife parties breached their obligations under these annuities, both the RSL parties and the MetLife parties presented expert testimony on the amount

of attorney's fees that each side had incurred. The RSL parties called former district court judge Mike O'Brien, who had testified as their fee expert in the 2018 trial before the county court. O'Brien testified that in his opinion, a total award of $1,034,567.14 in trial-level attorney's fees was reasonable and necessary. This amount included the award of $435,077.75 that the jury in the county court trial had found was a reasonable and necessary amount of attorney's fees for the RSL parties up to that point in time. O'Brien did not believe that segregation of the RSL parties' attorney's fees was required. O'Brien also opined that $175,000 was a reasonable and necessary amount of conditional appellate attorney's fees.

The MetLife parties called former district court judge Erin Lunceford as their expert on attorney's fees. Lunceford testified that the MetLife parties incurred a total of $933,387.10 in recoverable attorney's fees, which she then broke down further into fees relating to the MetLife parties' interpleader claim—$40,229.05—and the MetLife parties' declaratory judgment claim—$893,158.05. With respect to the interpleader fees, she tried to include a "breakdown per annuitant as it was possible." With respect to the declaratory judgment fees, she tried to determine whether fees related to Pippins, Morris, or Donna O'Brien, and to the extent that she could not, she allocated one-third of the fee to each of the Individuals. She then applied a "15 percent billing judgment" discount and determined that the total amount of

23

recoverable fees on the MetLife parties' declaratory judgment claim was $759,184.34.

Following the close of testimony, the district court again granted interpleader relief to the MetLife parties. The court found that the MetLife parties did not breach the Pippins annuity because Pippins did not put MetLife on notice that he wanted to change ownership and payment rights to the annuity before he sued MetLife. The court further found that although the MetLife parties breached the O'Brien non-IRA annuity, O'Brien suffered no damages. The court awarded the MetLife parties $34,194.69 in attorney's fees on the MetLife parties' interpleader claim "that they can collect . . . out of the interpled funds." The court awarded attorney's fees to both sides on the declaratory judgment claim: $820,390.94 to the MetLife parties and $351,299.25 to the RSL parties. The court did not award the RSL parties "anything with regard to the first trial [in county court] or before that" because their expert "did not segregate those fees out appropriately for me." The court requested that the parties prepare proposed final judgments.

After trial, MetLife and Brighthouse requested that they be allowed to amend their pleadings to seek pre- and post-judgment interest on the amount of attorney's fees awarded by the court. Their proposed amended petition was the first to name Brighthouse as a defendant. The district court granted this relief on the date it signed

the final judgment, and MetLife and Brighthouse filed their amended petition the next day.[6]

The district court's final judgment stated:

> Defendants Metropolitan Life Insurance Company ("MetLife"), MetLife Insurance Company of Connecticut ("MLICC"), and MetLife Investors USA Insurance Company ("MLIUSA" and, together with MetLife and MLICC, the "Annuity Issuers"), likewise announced ready for trial, appearing through their duly authorized representatives and attorneys of record.

After defining the "Annuity Issuers," the final judgment included a footnote that stated: "MLICC and MLIUSA appeared through their successor in interest, Brighthouse Life Insurance Company." The district court ordered that both "the Annuity Issuers" and the RSL parties were entitled to partial declaratory relief. The court declared that Morris could not assign, sell, or transfer his annuity or the payments, nor could O'Brien assign, sell, or transfer the IRA annuity or the payments. O'Brien could not assign, sell, or transfer to the RSL parties the payments due to her under the non-IRA annuity, but she could assign, sell, or transfer her ownership of that annuity to the RSL parties. Pippins could assign, sell, or transfer both his ownership rights and the payments due to him under his annuity.

---

[6]   In the order granting MetLife and Brighthouse leave to amend their pleadings, the district court ordered MetLife and Brighthouse to file their amended pleading "in substantially the form attached to the Motion [for leave to amend], within a reasonable time after the Court signs this order."

25

The district court granted the Annuity Issuers relief on their interpleader claim and discharged them from liability with respect to the payments made under the annuities. The court ordered the Annuity Issuers to make all future payments under the Morris and Pippins annuities to Matz. The court also ordered that the Annuity Issuers recover $34,194.69 in attorney's fees on their interpleader claim, "with such fees to be paid from the amounts currently on deposit in the Court's registry." The court dismissed with prejudice the RSL parties' claims for breach of contract, breach of fiduciary duty, and breach of the duty of good faith and fair dealing.

With respect to the Annuity Issuers' attorney's fees on their declaratory judgment claim, the district court awarded them $469,091.09, representing the amount of their reasonable and necessary attorney's fees minus the RSL parties' reasonable and necessary attorney's fees. The court further awarded the Annuity Issuers a total of $175,000 in conditional appellate attorney's fees.

The RSL parties moved for a new trial. Among other arguments, the RSL parties contended that the district court erred by holding them jointly and severally liable for the attorney's fees awarded to the MetLife parties. They further argued that the court erred by signing a final judgment recognizing that MetLife Connecticut and MetLife Investors appeared through their successor Brighthouse "when Brighthouse never formally intervened in the suit and neither the MetLife nor RSL Parties formally joined it as a party." The RSL parties also argued that the court erred

26

by awarding attorney's fees to the MetLife parties "where they failed to segregate those fees by party and by claim, especially where four different annuities existed formerly held by three different Annuitants."

The RSL parties' motion for new trial was overruled by operation of law. This appeal followed. The nine issues presented on appeal can be grouped into three overarching topics:

- Defect in parties.
- Interpleader.
- Attorney's fees.

They will be taken in order.

## Defect in Parties

Section I of the RSL parties' brief is entitled "A Fatal Defect in Parties Mars the Final Judgment." Beneath this broad heading, the RSL parties advance four propositions in their first four issues.[7] They first argue that a fatal defect in parties rendered the district court's final judgment erroneous because MetLife Connecticut and MetLife Investors did not announce ready for, appear at, or introduce evidence

---

[7]     As part of these related issues, the RSL parties argue that Brighthouse lacks standing to enforce the alleged anti-assignment provisions in the Pippins annuity originally issued by MetLife Connecticut and the Morris annuity originally issued by MetLife Investors. At oral argument, the RSL parties acknowledged—notwithstanding the arguments raised in their appellate brief—that the question of Brighthouse's ability to prosecute claims on behalf of MetLife Connecticut and MetLife Investors is not one of standing. *See Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 775 (Tex. 2020) (discussing distinction between doctrines of standing and capacity).

at trial. They next argue that no evidence proves that Brighthouse serves as a successor in interest to MetLife Connecticut and MetLife Investors, such that it can prosecute the case on behalf of those entities. The RSL parties further argue that Brighthouse did not become a party to this suit "via any conventional procedural mechanism." Finally, they argue that the final judgment fatally varies from the MetLife parties' live pleading at the time of trial.

Texas procedure has long had a specific provision for dealing with defects in parties. Before promulgation of the 1941 rules of civil procedure, old article 2010 required a verified denial as a precondition to complaining. *See Traders & Gen. Ins. Co. v. Garry*, 143 S.W.2d 370, 373 (Tex. 1940) (holding issue was waived because "no verified pleading was filed asserting a defect of parties, as required by Article 2010, Revised Civil Statutes").

The old statute's requirement of a verified denial carried forward into the current rules. Specifically, Rule of Civil Procedure 93 requires pleadings that assert certain matters to be verified. TEX. R. CIV. P. 93. One of these matters is "[t]hat there is a defect of parties, plaintiff or defendant." TEX. R. CIV. P. 93(4); *Allison v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 703 S.W.2d 637, 638 (Tex. 1986) (per curiam) ("A proper challenge to a defect of parties is by way of verified plea."). Another of these matters is "[t]hat the plaintiff is not entitled to recover in the capacity in which he sues, or that the defendant is not liable in the capacity in which

he is sued." TEX. R. CIV. P. 93(2). If a party fails to comply with Rule 93 by filing a verified pleading, the party waives its right to complain about the matter. *Pledger v. Schoellkopf*, 762 S.W.2d 145, 146 (Tex. 1988) (per curiam).

Whether a party is a successor in interest is a question of capacity. *See Nine Greenway Ltd. v. Heard, Goggan, Blair & Williams*, 875 S.W.2d 784, 787 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *see also M&E Endeavours LLC v. Cintex Wireless LLC*, No. 01-15-00234-CV, 2016 WL 1590642, at *3 (Tex. App.— Houston [1st Dist.] Apr. 19, 2016, no pet.) (mem. op.) ("A successor-in-interest is an entity that assumes the burdens and becomes invested with the rights of another entity by some form of legal succession."). Thus, a challenge to whether a party is a successor in interest—and can recover in that capacity—is a matter that must be raised by verified pleading under Rule 93. *See Nine Greenway*, 875 S.W.2d at 787; *see also CHCA E. Houston, L.P. v. Henderson*, 99 S.W.3d 630, 633 (Tex. App.— Houston [14th Dist.] 2003, no pet.) ("[M]isidentification among affiliated corporations or successors-in-interest is an issue that must be raised by verified pleading."); *John C. Flood of DC, Inc. v. SuperMedia, L.L.C.*, 408 S.W.3d 645, 651– 52 (Tex. App.—Dallas 2013, pet. denied) (holding that question whether party is entitled to sue on contract—i.e., whether party has privity of contract—is question of capacity and must be challenged by verified pleading or challenge is waived).

On appeal, the RSL parties argue that Pippins obtained his annuity from MetLife Connecticut and Morris obtained his annuity from MetLife Investors, and neither of them contracted with Brighthouse. They further argue that Brighthouse filed no pleadings before trial in the district court that sought to enforce anti-assignment language in either annuity, and, thus, Brighthouse cannot enforce any such provisions in the annuity.

By arguing that Brighthouse cannot recover in the absence of pleadings and evidence proving its status as the successor in interest of MetLife Connecticut and MetLife Investors, the RSL parties are essentially arguing that Brighthouse lacks capacity to enforce the anti-assignment language in the Pippins and Morris annuities. This is a matter that must be raised by verified pleading under Rule 93. *See* TEX. R. CIV. P. 93(2); *Nine Greenway*, 875 S.W.2d at 787.

It is undisputed that the RSL parties never filed a verified pleading arguing that there was a defect in parties or that Brighthouse was not entitled to recover in its capacity as the successor in interest to MetLife Connecticut and MetLife Investors. The RSL parties argue that they were not required to file a verified pleading raising these matters because the MetLife parties did not file a pleading naming Brighthouse as a party until after the district court signed a final judgment, and therefore they could not have known that it was necessary to file a verified

30

pleading raising a defect of parties or challenging Brighthouse's capacity. Under the facts of this case, we disagree.

When this dispute initially began in the county court in 2011, RSL Funding sued the Individuals and three MetLife entities that had issued the annuities to the Individuals: MetLife, MetLife Connecticut, and MetLife Investors. These same three MetLife entities filed a counterclaim and cross-claim for declaratory relief and interpleader.

The Individuals initiated the underlying proceeding in district court in November 2011, and they named four defendants: RSL Funding, MetLife, MetLife Connecticut, and MetLife Investors. In a cross-claim, RSL Funding asserted affirmative claims against MetLife, MetLife Connecticut, and MetLife Investors. These three MetLife entities did not file a pleading in the district court raising affirmative claims at that time. Instead, they moved to abate the case due to the pending county court proceeding and, subject to this plea in abatement, answered the Individuals' original petition and RSL Funding's cross-claim. The district court granted this motion and abated the case.

The first mention of Brighthouse in the district court came in September 2018, when the MetLife parties filed a brief responding to the RSL parties' motion to vacate the order abating the case. After defining "the MetLife Defendants" as

31

MetLife, MetLife Connecticut, and MetLife Investors, they included the following

footnote:

> Effective November 14, 2014, MetLife Insurance Company of Connecticut and MetLife Investors USA Insurance Company merged, retaining the name MetLife Insurance Company of Connecticut. Effective the same day, MetLife Insurance Company of Connecticut was renamed MetLife Insurance Company USA. Effective March 6, 2017, MetLife Insurance Company USA was renamed Brighthouse Life Insurance Company.

The MetLife parties included this footnote in many of their filings in the district

court after this date.[8]

---

[8] It is unclear when Brighthouse was first mentioned in county court filings, but the county court's final judgment, signed in December 2018, recited that "Metropolitan Life Insurance Company, MetLife Insurance Company of Connecticut, MetLife Investors USA Insurance Company, and Brighthouse Life Insurance Company (the 'MetLife Parties') likewise announced ready for trial, appearing through their duly authorized representatives and attorneys of record." After the county court rendered judgment in favor of the RSL parties, MetLife and Brighthouse filed a notice of appeal and obtained reversal of the county court's judgment in the Fourteenth Court of Appeals. *See Metro. Life Ins. Co. v. RSL Funding, LLC*, No. 14-19-00155-CV, 2021 WL 330447 (Tex. App.—Houston [14th Dist.] Feb. 2, 2021, no pet.) (mem. op.). Following remand, MetLife and Brighthouse continued filing documents in the county court, including a motion to release the supersedeas bonds, deposit all future annuity payments into the court's registry, and compel Matz to refund the amounts disbursed to her; a motion for partial summary judgment; and a response to the RSL parties' cross-motion for summary judgment. In December 2021, the RSL parties filed an amended answer and Matz filed a counterclaim to the declaratory judgment and interpleader claims "filed by Metropolitan Life Insurance Company, MetLife Insurance Company of Connecticut (n/k/a Brighthouse Life Insurance Company), and MetLife Investors USA Insurance Company (n/k/a Brighthouse Life Insurance Company) (collectively, the 'MetLife Parties')." The county court action was later consolidated with the district court action.

The RSL parties also acknowledged the corporate reorganization that involved MetLife Connecticut, MetLife Investors, and Brighthouse. In December 2018, RSL Funding supplemented its motion to reconsider lifting the abatement with, among other exhibits, "the opposition to the motion to render final judgment filed in the County Court by [MetLife], [MetLife Connecticut], [MetLife Investors], and Brighthouse Life Insurance Company ('MetLife Parties')." In November 2019, RSL Funding submitted a status report to the district court following the court's issuance of a notice of intent to dismiss the case for want of prosecution. In this report, RSL Funding listed Brighthouse as one of the "MetLife Parties" challenging the county court's final judgment in the Fourteenth Court of Appeals. Furthermore, in August 2022, shortly before trial in the district court, the RSL parties served amended responses to the MetLife parties' request for disclosure. Under "[t]he correct names of the parties to the lawsuit," the RSL parties listed "Brighthouse Life Insurance Company."

Following reinstatement of the district court case, MetLife and Brighthouse, "as successor to MetLife [Connecticut] and MetLife [Investors]," sought affirmative relief by moving for partial summary judgment on "the counterclaims and cross-claims of MetLife and Brighthouse" and on the claims asserted by the Individuals

and the RSL parties.[9] The RSL parties, on the other hand, sought partial summary judgment "adjudging Marla Matz to be the owner of an annuity policy issued by MetLife Insurance Company of Connecticut ('MetLife Connecticut') to Cheveze D. Pippins." In a footnote, the RSL parties stated: "In a subsequent corporate reorganization, MetLife Connecticut became part of Brighthouse Life Insurance Co. This motion will continue to refer to the annuity issuer as MetLife Connecticut, with the understanding that all its liabilities and obligations passed to Brighthouse Life Insurance Co."[10]

The parties also filed a joint motion to consolidate the district court and county court actions. This motion was filed by "Defendants Metropolitan Life Insurance Company and Brighthouse Life Insurance Company (collectively, the 'Annuity Issuers') and Defendant[s] RSL Funding, LLC ('RSL Funding'), RSL Special-IV, Ltd., and Marla Matz Feldman (collectively, the 'RSL parties')." Counsel for the

---

[9]     In their response to this motion, the RSL parties stated that they "oppose the motion for partial summary judgment filed by Metropolitan Life Insurance Company and Brighthouse Life Insurance Company (as ultimate successor to MetLife Insurance Company of Connecticut and MetLife Investors USA Insurance Company) (together, 'MetLife Parties')."

[10]    Brighthouse responded to the RSL parties' summary judgment motion. It included a footnote stating: "Brighthouse is the successor to both MetLife Insurance Company of Connecticut ('MetLife Connecticut') and MetLife Investors USA Insurance Company ('MLIUSA'), which were two of the original defendants in this action. As the RSL parties have done in the Amended Motion, Brighthouse has referred in this response to the issuer of the annuity at issue as MetLife Connecticut."

34

RSL parties and counsel for "Defendants Metropolitan Life Insurance Company and Brighthouse Life Insurance Company" signed the motion. The district court granted this motion and consolidated the cases.

Following consolidation of the cases, the RSL parties moved for realignment of the parties. Specifically, they requested realignment as plaintiffs and realignment of "Metropolitan Life Insurance Company and Brighthouse Life Insurance Company ('MetLife Parties'), as defendants." They further requested that the district court allow the parties the opportunity "to replead in the proper adversarial capacity." The district court granted this motion in part. The district court designated the Individuals, RSL Funding, RSL Special, and Matz as plaintiffs. It further designated "the Annuity Issuers"—defined in the order as Metropolitan Life Insurance Company and Brighthouse Life Insurance Company—as defendants. The district court did not re-style the case or allow the parties to "replead in their realigned capacities."

The district court held a pre-trial hearing and considered the parties' competing summary judgment motions. At the beginning of this hearing, counsel for the MetLife parties appeared "for MetLife and Brighthouse Life." Following this hearing, the district court signed an order stating that it "heard argument on the issue of the entitlement of Defendants Metropolitan Life Insurance Company and Brighthouse Life Insurance Company (collectively, the 'Annuity Issuers') to

35

interpleader relief, as requested in The Annuity Issuers' Motion for Partial Summary Judgment and Supporting Brief (the 'Motion')." The district court granted the motion "on the issue of the Annuity Issuers' entitlement to interpleader relief" and ordered "that the Annuity Issuers are discharged from all liability to any other party to this action with respect to the annuity payments the Annuity Issuers have paid . . . ."

This ruling granting the request for interpleader relief did not resolve all issues between the parties, so the district court held a bench trial. At trial, counsel for the MetLife parties appeared "for the Defendants." At the close of trial, the district court announced that it had already granted interpleader relief, and it awarded $34,194.69 in attorney's fees on that claim, to be collected from the interpled funds. The district court then awarded $820,390.34 in attorney's fees "on the dec action on MetLife's side."

The RSL parties did not object at any point prior to or during trial that Brighthouse was not a proper party to this proceeding or that it could not recover in the capacity of MetLife Connecticut and MetLife Investors' successor in interest. Instead, the first time that the RSL parties arguably raised the issue was in their objections to the MetLife parties' proposed final judgment, filed after trial on October 12, 2022, when they argued that Brighthouse should not recover pre-judgment interest on attorney's fees when it "never contracted with any of the

36

[Individuals], never issued a single annuity, never even existed in 2011, never incurred any fees in this litigation until a filing in 2018 that purported to list it as a party, and never segregated the fees it incurred."[11]

We conclude that the RSL parties' post-trial objections to Brighthouse's presence in the case came too late. Not only did the RSL parties not file a verified pleading raising the defect in parties or challenging Brighthouse's capacity, as required by Rule 93, they did not object in any form before trial. Brighthouse sought and obtained affirmative relief from the district court without objection to its presence in the case. Moreover, the RSL parties repeatedly acknowledged Brighthouse's status as successor in interest to MetLife Connecticut and MetLife Investors, and following consolidation of the county court and district court cases, they requested that the district court realign MetLife *and Brighthouse* as defendants.

---

[11] On October 21, 2022, the RSL parties filed an opposition to the MetLife parties' request to amend their pleadings to plead for prejudgment interest on the attorney's fees award. The RSL parties opposed the amendment in part because Brighthouse "seeks prejudgment interest for over 11 years even though it first purported to appear in the county court case on May 10, 2018." Although Brighthouse included footnotes explaining the alleged corporate reorganization in various filings, Brighthouse "never sought to intervene formally in the county court case or in this one," and the MetLife parties never amended their pleadings to add or join Brighthouse as a party. The RSL parties argued that, as a result, Brighthouse should not recover prejudgment interest on its attorney's fees. In their motion for new trial, the RSL parties argued that the district court erred by signing a final judgment that recognized that MetLife Connecticut and MetLife Investors appeared through Brighthouse, their successor in interest, when Brighthouse did not formally intervene in the suit, and none of the existing parties joined it as a party.

Under these facts, the RSL parties cannot wait until after the district court announced its intention at the close of trial to award MetLife and Brighthouse over $800,000 in attorney's fees—after already granting interpleader relief to both MetLife and Brighthouse—and then argue for the first time in their post-trial objections that Brighthouse was not a proper party in this proceeding. In light of the facts here, Brighthouse was not required to take further action or to present evidence proving that it was the successor in interest of MetLife Connecticut and MetLife Investors. *See Nine Greenway*, 875 S.W.2d at 787 (holding that when tenants waived issue of landlord's capacity to sue as successor in interest by failing to file verified pleading, "it was not necessary that the landlord prove its capacity").

On the day the district court signed the final judgment in this case, it also granted MetLife and Brighthouse leave to amend their pleadings to seek pre- and post-judgment interest on attorney's fees. The district court signed this order approximately three hours before the signed final judgment was filed. The court therefore did not grant MetLife and Brighthouse leave to amend their pleadings *after* it had signed the final judgment. *Cf. Automaker, Inc. v. C.C.R.T. Co.*, 976 S.W.2d 744, 746 (Tex. App.—Houston [1st Dist.] 1998, no pet.) ("A trial court cannot grant a motion to amend the pleadings once the trial court renders judgment."). The amended counterclaim specifically named Brighthouse as a party, alleged that it was the successor in interest to MetLife Connecticut and MetLife Investors, and included

38

Brighthouse as a party seeking interpleader relief, declaratory judgment, attorney's fees, and pre- and post-judgment interest.

The final judgment recited that "[d]efendants Metropolitan Life Insurance Company ('MetLife'), MetLife Insurance Company of Connecticut ('MLICC'), and MetLife Investors USA Insurance Company ('MLIUSA' and, together with MetLife and MLICC, the 'Annuity Issuers'), likewise announced ready for trial, appearing through their duly authorized representatives and attorneys of record." Immediately following the parenthetical defining "Annuity Issuers," the district court included a footnote that stated: "MLICC and MLIUSA appeared through their successor in interest, Brighthouse Life Insurance Company." Throughout the judgment, the district court granted relief to the "Annuity Issuers"—the decretal language in the judgment did not mention any of the specific MetLife entities or Brighthouse.

We conclude that the definition of "Annuity Issuers" in the final judgment was broad enough to include Brighthouse. The judgment makes it clear that Brighthouse appeared at trial and stood in the shoes of MetLife Connecticut and MetLife Investors as their successor in interest. We therefore conclude that the district court's final judgment conforms to the pleadings. *See* TEX. R. CIV. P. 301.

We overrule the RSL parties' first four issues.

**Propriety of Interpleader Relief**

In their fifth and sixth issues, the RSL parties challenge the district court's summary judgment ruling that the MetLife parties were entitled to interpleader relief. Specifically, the RSL parties argue that no rival claims existed with respect to any of the annuities and none of the MetLife parties qualify as "innocent and disinterested stakeholders" that may recover attorney's fees for the interpleader claim.

## A.    Standard of Review

We review a trial court's summary judgment ruling de novo. *Helena Chem. Co. v. Cox*, 664 S.W.3d 66, 72 (Tex. 2023). A party moving for traditional summary judgment must demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law on the issues expressly set out in the motion. TEX. R. CIV. P. 166a(c). When reviewing a summary judgment ruling, we view the evidence in the light most favorable to the non-moving party, indulging reasonable inferences and resolving doubts against the party seeking summary judgment. *Helena Chem. Co.*, 664 S.W.3d at 73.

## B.    Governing Law

"Texas law recognizes that disinterested stakeholders should be afforded a method by which they are able to proceed when they are subjected to conflicting claims," and the Rules of Civil Procedure provide such a mechanism through an

interpleader action. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 850 (Tex. 2018). Rule 43 states:

> Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that he is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim. The provisions of this rule supplement and do not in any way limit the joinder of parties permitted in any other rules.

TEX. R. CIV. P. 43; *Clayton v. MONY Life Ins. Co. of Am.*, 284 S.W.3d 398, 401 (Tex. App.—Beaumont 2009, no pet.) ("Presented with conflicting claims to the stake it holds, a stakeholder who does not know which claimant to pay and fears exposure to double or multiple liability for the single stake, may apply to a court for protection.").

When a party is presented with multiple claims to property in its possession, the party may use the interpleader procedure to "join all claimants in a lawsuit, tender the disputed property into the registry of the court, and request a discharge" of liability from the trial court. *Clayton*, 284 S.W.3d at 402; *Heggy v. Am. Trading Emp. Ret. Acct. Plan*, 123 S.W.3d 770, 775 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g) ("A party faced with competing claims obtains a discharge of liability to the competing claimants by interpleading the funds."). "If a reasonable

41

doubt exists as to the proper party to pay, the interpleader procedure allows the court to make that decision and discharge the stakeholder from that responsibility." *Clayton*, 284 S.W.3d at 401; *see State Farm Life Ins. Co. v. Martinez*, 216 S.W.3d 799, 806 (Tex. 2007) ("[I]f a reasonable doubt exists in law or fact as to whom the [insurance] proceeds belong, an insurer should interplead them and let the courts decide."). Thus, under this procedure, the rival claimants litigate the ownership issue amongst themselves, "rather than with a stakeholder who has no claim to the fund and simply seeks to pay the proper claimant." *Clayton*, 284 S.W.3d at 402.

A party is entitled to interpleader relief when it establishes three elements: (1) it is either subject to, or has reasonable grounds to anticipate, rival claims to the same funds; (2) it has not unreasonably delayed filing its action for interpleader; and (3) it has unconditionally tendered the funds into the registry of the court. *Rodriguez*, 547 S.W.3d at 850. Failure to satisfy any of these three elements precludes interpleader relief. *FinServ Cas. Corp. v. Transamerica Life Ins. Co.*, 523 S.W.3d 129, 141 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). The party seeking interpleader relief bears the burden to establish these elements. *See Clayton*, 284 S.W.3d at 402; *Sav. & Profit Sharing Fund of Sears Emps. v. Stubbs*, 734 S.W.2d 76, 79 (Tex. App.—Austin 1987, no writ). Interpleader jurisdiction "is determined at the time the interpleader complaint is filed." *Rodriguez*, 547 S.W.3d at 850. Courts should resolve "[e]very reasonable doubt" in favor of the stakeholder's right to

interplead. *Martinez*, 216 S.W.3d at 806 (quoting *Bryant v. United Shortline Inc. Assurance Servs., N.A.*, 972 S.W.2d 26, 31 (Tex. 1998)).

Generally, interpleader involves two stages of litigation. *Clayton*, 284 S.W.3d at 402; *Northshore Bank v. Com. Credit Corp.*, 668 S.W.2d 787, 789 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (quotations omitted). In the first stage, the trial court determines whether interpleader is appropriate. *Clayton*, 284 S.W.3d at 402. Typically, the trial court discharges the stakeholder from liability to the rival claimants in this stage of the procedure, and the stakeholder "can avoid the cost of additional litigation over the stake it once held, but to which it asserts no claim." *Id.* In the second stage of the proceeding, after the court has determined that interpleader is appropriate, the rival claimants litigate ownership of the funds. *Id.*

An "innocent stakeholder" in an interpleader action is entitled to attorney's fees to be paid out of the interpleaded funds. *Rodriguez*, 547 S.W.3d at 850; *Martinez*, 216 S.W.3d at 803 ("Under the common law, a stakeholder is entitled to recover its attorney's fees from the deposited funds unless there were no rival claimants or the interpleader was unreasonably delayed."); *RSL-3B-IL, Ltd. v. Prudential Ins. Co. of Am.*, 470 S.W.3d 131, 139 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) ("Texas interpleader law entitles an innocent stakeholder to recover its attorney's fees from the funds it deposits if it has a reasonable doubt with respect to which claimant is entitled to the fund.").

43

## C.     Analysis

### 1.     Whether rival claims to the annuity payments existed

The RSL parties first argue that the district court erred by granting interpleader relief because the MetLife parties did not establish that they were either subject to, or had reasonable grounds to anticipate, that rival claims to the annuity payments existed, and therefore they did not establish that they were entitled to judgment as a matter of law on their interpleader claim.

In the final judgment, the district court made declarations with respect to the ownership of the annuities. The court declared that (1) Morris could not assign, sell, or transfer ownership of his annuity or the payments under the annuity to the RSL parties; (2) O'Brien could not assign, sell, or transfer ownership of or the payments under the IRA annuity, and she could not transfer payments under the non-IRA annuity, but she could transfer ownership of that annuity to the RSL parties; and (3) Pippins could assign, sell, or transfer both ownership of and the payments under his annuity to the RSL parties. The court granted interpleader relief and discharged the MetLife parties "from all liability to any other party to this action with respect to the payments the Annuity Issuers have paid under the Morris Annuity, the O'Brien Qualified Annuity [the IRA annuity], the O'Brien Nonqualified Annuity [the non-IRA annuity], and the Pippins Annuity, whether into the Court's registry or directly

44

to Matz Feldman, from the filing of this action through the date of this Final Judgment."

The court awarded the MetLife parties $34,194.69 in attorney's fees on the interpleader claim, "plus 90% of any interest that has accrued thereon," to be paid from the amount on deposit in the court's registry. The court ordered the district clerk to pay the remaining amount of funds on deposit in the registry, "plus 90% of any interest that has accrued thereon," to Matz. The court further ordered the MetLife parties to make all future payments under the Morris and Pippins annuities to Matz.

On appeal, no party challenged the district court's declarations regarding the ownership of the annuities. Further, the MetLife parties do not challenge the order requiring payment of future amounts under the Morris and Pippins annuities to Matz. In light of these unchallenged portions of the district court's judgment, any error by the court in granting interpleader relief to the MetLife parties and discharging them from liability is harmless. *See* TEX. R. APP. P. 44.1(a). We therefore turn to the RSL parties' arguments with respect to the attorney's fees awarded to the MetLife parties on their interpleader claim.

### 2. Whether the MetLife Parties are innocent and disinterested stakeholders

A court may award attorney's fees to an interpleading party, but such fees "are available only to an innocent, disinterested stakeholder." *Rodriguez*, 547 S.W.3d at 851. If the interpleading party "is responsible for the conflicting claims to the funds

or property, that party is not entitled to attorney's fees incurred in interpleading the claimants." *Id.* (quotations omitted). Noting that it has not defined "innocent, disinterested stakeholder," the Texas Supreme Court has cited definitions from Black's Law Dictionary defining "innocent" as "free from legal fault"; "disinterested" as "not having a pecuniary interest in the matter at hand"; and "stakeholder" as "[a] disinterested third party who holds money or property, the right to which is disputed between two or more other parties." *Id.* at 852. A party who asserts a claim to the interpleaded funds is not a disinterested stakeholder. *Id.* (quoting *FinServ Cas. Corp.*, 523 S.W.3d at 141).

In *Rodriguez*, the Texas Supreme Court also cited law from other jurisdictions in stating that attorney's fees in an interpleader action are available only to an innocent, disinterested stakeholder. *See id.* at 851. In one of the cited cases, *Sanders v. Armour Fertilizer Works*, 292 U.S. 190, 200 (1934), the United States Supreme Court stated that "[a]ssertion by the complainant of entire disinterestedness is essential to a bill of interpleader." In an interpleader action, the plaintiff must aver that it "has no interest in the subject-matter of the suit"; it must "admit title in the claimants and aver that he is indifferent between them"; and it must admit that it "cannot seek relief in the premises against either of them." *Id.* (quotations omitted); *see also Wolf v. Horton*, 322 So. 2d 71, 73 (Fla. Dist. Ct. App. 1975) (per curiam) (stating that to be entitled to award of attorney's fees in interpleader action, "a

46

plaintiff must prove his total disinterest in the stake he holds other than that of bringing it into court so that conflicting claims thereto can be judicially determined").

The RSL parties cite additional law from the Fifth and Eighth Circuits to support their contention that the MetLife parties do not qualify as disinterested stakeholders even though the MetLife parties do not assert that they are entitled to retain any portion of the monthly annuity payments. The Fifth Circuit has held that the trial court has discretion to award attorney's fees in an interpleader action, and the court may deny a fee award "when the interpleader is not a mere stakeholder but has a substantial controversy with one of the claimants." *Phillips Petroleum Co. v. Hazlewood*, 534 F.2d 61, 63 (5th Cir. 1976). In *Phillips Petroleum*, the trial court found that the company was "not a mere stakeholder but actively took a position opposing [one claimant's] claim and supporting the claims of [the other claimant]." *Id.* The Fifth Circuit held that under these factual circumstances, the trial court did not abuse its discretion by denying the company's request for attorney's fees. *Id.*; *see Rhoades v. Casey*, 196 F.3d 592, 603 (5th Cir. 1999) (citing *Phillips Petroleum* and stating that attorney's fees are available "when the interpleader is a disinterested stakeholder, and is not in substantial controversy with one of the claimants").

In *Federated Mutual Insurance Co. v. Moody Station and Grocery*, 821 F.3d 973, 975–76 (8th Cir. 2016), the interpleading insurance company initiated an

interpleader action to determine the proper allocation of insurance proceeds, but it contested payment of a portion of the funds, arguing that the insured had not met certain policy requirements. The trial court awarded ten percent of the interpleaded funds to the insurance company as attorney's fees, which one of the claimants challenged on appeal. *Id.* at 979. The Eighth Circuit first stated that although a disinterested stakeholder "should not ordinarily be out of pocket for the necessary expenses and attorney's fees incurred," any amount awarded should be "modest" because the act of depositing the funds into the registry of the court and obtaining an order of discharge "does not usually involve any great amount of skill, labor, or responsibility." *Id.* (quotations omitted).

The Eighth Circuit further concluded that the insurance company was not a disinterested stakeholder because it had alleged that the entire interpleaded amount was in controversy, and it "consistently opposed" one of the claimant's attempts to collect on its insurance policy. *Id.* Under this circumstance, the insurance company was "not a disinterested stakeholder deserving attorney fees." *Id.*

We do not agree with the MetLife parties that "disinterested" is limited to the Black's Law Dictionary definition of the term cited by the Texas Supreme Court in *Rodriguez*, such that the only way a stakeholder can be "interested" is if it has a "pecuniary interest in the matter at hand." *See* 547 S.W.3d at 852. Applying a broader definition is consistent with case law from other states and federal

48

interpleader jurisprudence cited by the supreme court in *Rodriguez*. Under that law, the MetLife parties do not qualify as disinterested stakeholders. The MetLife parties did more than deposit the interpleaded funds into the registry of the county and district courts and allow the rival claimants—the RSL parties and the Individuals— the chance to argue their respective positions concerning ownership over the funds. Instead, the MetLife parties took a position on the merits of this ownership question, arguing that the anti-assignment language in the annuities prohibited them from acting in accordance with the assignment agreements and bills of sale to change the ownership and payees of the annuities from the Individuals to Matz. Moreover, the MetLife parties continued to assert this position long after the 2016 arbitration award resolved the dispute between the RSL parties and the Individuals and the Individuals ceased participating in this litigation.

Moreover, the Texas Supreme Court has held that if the interpleading party is responsible for the conflicting claims to the funds, it is not entitled to attorney's fees incurred in the interpleader action. *See id.* at 851. Here, at the time the RSL parties and the Individuals approached the MetLife parties about changing the ownership and payees of the annuities, the RSL parties and the Individuals were aligned. They had signed the assignment agreements and bills of sale transferring the Individuals' ownership rights in the annuities to the RSL parties. It was the MetLife parties' refusal to acknowledge the agreements between the RSL parties and the Individuals

that ultimately led to the filing of this litigation and the MetLife parties' later assertion of the interpleader claim. No conflicting claims to the annuity payments existed until the MetLife parties refused to change the ownership and payee designations on the annuities.

We conclude that the MetLife parties do not qualify as "innocent, disinterested stakeholders" that may recover attorney's fees in their interpleader action. *See id.* at 851–52. We hold that the district court erred by awarding $34,194,69 in attorney's fees on this claim to the MetLife parties to be paid out of the funds on deposit in the registry of the court.

We overrule the RSL parties' fifth issue and sustain the RSL parties' sixth issue in part.

**Attorney's Fees**

In their final three issues, the RSL parties challenge the district court's award of attorney's fees. They first argue that the court erred by awarding fees to the MetLife parties because they did not properly segregate unrecoverable fees from recoverable fees. The RSL parties further argue that they properly segregated their attorney's fees, and thus the court erred by failing to award them fees. Finally, the RSL parties argue that the court erred by imposing joint and several liability on them.

## A.   Segregation of Attorney's Fees

Generally, in Texas, each party must pay their own attorney's fees. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 483 (Tex. 2019). However, there are certain circumstances in which the prevailing party can recover attorney's fees from the opposing party, such as when authorized by statute or contract. *Id.* at 484. When fee-shifting is authorized, the party seeking the fee award must prove that the requested fees are reasonable and necessary. *Id.*; *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017) ("The party seeking recovery [of attorney's fees] bears the burden of proof to support the award.").

As discussed above, an "innocent stakeholder" in an interpleader action is entitled to payment of its attorney's fees out of the interpleaded funds. *Rodriguez*, 547 S.W.3d at 850. Another situation in which fee-shifting is authorized is an action under the Declaratory Judgments Act ("DJA"). In a proceeding under the DJA, "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE § 37.009. The DJA does not limit recoverable fees to a prevailing party; instead, the trial court has discretion to award fees to the prevailing party, the nonprevailing party, both parties, or neither party. *Severs v. Mira Vista Homeowners Ass'n*, 559 S.W.3d 684, 712 (Tex. App.—Fort Worth 2018, pet. denied); *Brookshire Katy Drainage Dist. v. Lily Gardens, LLC*, 333 S.W.3d 301, 313 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (op. on

reh'g) ("In the exercise of its discretion to award attorney's fees in [a] declaratory judgment action, the trial court may award attorney's fees to the prevailing party, may decline to award attorney's fees to either party, or may award attorney's fees to the nonprevailing party, regardless of which party sought declaratory judgment.").

A fee claimant must segregate attorney's fees that are recoverable from those that are not recoverable. *Kinsel*, 526 S.W.3d at 427. If a lawsuit involves multiple claims or parties, the fee claimant must segregate recoverable fees from those incurred by parties or on claims for which fees are not recoverable. *Clearview Props., L.P. v. Prop. Tex. SC One Corp.*, 287 S.W.3d 132, 143 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

The duty to segregate does not apply when the discrete legal services for which fees are incurred "advance both a recoverable and unrecoverable claim," such that the "fees are so intertwined that they need not be segregated." *Transcor Astra Grp. S.A. v. Petrobras Am. Inc.*, 650 S.W.3d 462, 482–83 (Tex. 2022) (quoting *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006)). However, "[i]ntertwined facts do not make [unrecoverable] fees recoverable." *Chapa*, 212 S.W.3d at 313; *Sustainable Tex. Oyster Res. Mgmt., L.L.C. v. Hannah Reef, Inc.*, 623 S.W.3d 851, 872 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) ("If any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees.").

Unrecoverable fees are not "rendered recoverable merely because they are nominal." *Chapa*, 212 S.W.3d at 313; *Hannah Reef*, 623 S.W.3d at 873. "If any of the component tasks relate solely to a cause of action for which legal fees are not recoverable, the claimant must segregate the fees." *Hannah Reef*, 623 S.W.3d at 873; *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 509 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (op. on reh'g). For example, "evidence of fee segregation is required concerning the drafting of a petition when the petition pleads causes of action for which attorney's fees are both recoverable and unrecoverable, and portions of the petition relate solely to the causes of action for which fees are unrecoverable." *Hannah Reef*, 623 S.W.3d at 873; *see Chapa*, 212 S.W.3d at 813 ("But when Chapa's attorneys were drafting her pleadings or the jury charge relating to fraud, there is no question those fees were not recoverable.").

The need to segregate attorney's fees is a question of law, and the extent to which fees for certain claims can or cannot be segregated is a mixed question of law and fact. *Hannah Reef*, 623 S.W.3d at 872 (citing *Chapa*, 212 S.W.3d at 312–13). The party seeking to recover attorney's fees bears the burden of demonstrating that fee segregation is not required. *Id.* An appellate complaint concerning failure to segregate attorney's fees is waived "if no one objects to the fact that the attorney's fees are not segregated as to specific claims." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997). This Court has held, in an appeal from a judgment following

53

a bench trial, that a party waives an objection to failure to segregate attorney's fees if the party does not raise the objection before the trial court renders judgment. *Donihoo v. Lewis*, No. 01-08-00277-CV, 2010 WL 1240970, at *14 (Tex. App.—Houston [1st Dist.] Mar. 25, 2010, pet. denied) (mem. op.).

**B.      Whether the MetLife Parties Properly Segregated Their Attorney's Fees**

**1.      Relevant testimony**

Former district court judge Erin Lunceford testified as the attorney's fees expert for the MetLife parties. She testified that MetLife incurred more than $1 million in attorney's fees, but she carved out fees relating to a sanctions motion that the MetLife parties did not prevail on and a summary judgment motion on the Pippins annuity. In reviewing billing records and determining the amount of recoverable fees, Lunceford did not consider any time entries that were redacted because she "can't say it's reasonable and necessary if [she does not] know what it is." She testified that the total amount of recoverable attorney's fees was $933,387.10, with $40,229.05 of that amount related to the interpleader claim, "and then the remainder would be all fees related to the declaratory judgment."

When determining the amount of fees recoverable for the interpleader action, Lunceford "really scrubbed" the billing records to make sure "that it only dealt with the interpleader action solely." Lunceford broke the attorney's fees down per year, beginning in 2011, so the district court could tell "how many fees were included in

each year related to the interpleader." She also tried to segregate the fees relating to each of the three Individuals. For example, for some time entries, she could determine that the entry related solely to the Pippins annuity, and she then allocated those fees to Pippins. There were some fees that she could not segregate by Individual, and for those fees, she divided that amount by three and allocated one-third of the fee to each of the Individuals. She believed that in the absence of specific billing records tying a fee to a particular Individual, allocating one-third of the fee to each Individual was reasonable.

The remaining attorney's fees were "related to the declaratory judgment because that's the only other cause of action." With respect to these fees, Lunceford again tried to allocate particular fees to particular Individuals, but when she could not segregate the recoverable declaratory judgment fees among the Individuals, she allocated one-third of the fee to each Individual. Lunceford believed that the MetLife parties could recover $893,158.05 in fees on their declaratory judgment claim, but she applied "a 15 percent billing judgment" discount because she believed that was reasonable and necessary. The 15 percent discount reduced the amount of recoverable fees on the declaratory judgment claim to $759,184.34 and reduced the amount of recoverable fees on the interpleader claim to $34,194.69.

At the close of trial, the district court ordered that the MetLife parties could recover $34,194.69 in attorney's fees on their interpleader claim, and it could

recover this amount out of the interpleaded funds. The court then awarded the MetLife parties $820,390.34 in attorney's fees on their declaratory judgment claims and awarded the RSL parties $351,299.25 in attorney's fees for defending the declaratory judgment action. In the final judgment, the district court awarded the MetLife parties $34,194.69 in fees on the interpleader claim and $469,091.09 in fees on the declaratory judgment claim, which represented the $820,390.34 awarded to the MetLife parties minus the $351,299.25 awarded to the RSL parties.

### 2. Preservation of error

The MetLife parties contend that the RSL parties did not preserve their segregation complaint for appellate review because they did not object to Lunceford's opinions or the exhibit she prepared summarizing her opinions "at any point before the Trial Court rendered judgment on the parties' substantive claims and competing fee claims." We disagree that the RSL parties failed to raise their segregation objection before judgment.

Although the RSL parties did not raise a contemporaneous objection to Lunceford's testimony based on failure to segregate, they did object following the MetLife parties' resting of their case in chief and some discussion among counsel and the district court of various attorney's fees issues. The RSL parties' counsel "object[ed] to counsel's narrative expert testimony on segregating attorneys' fees [that] MetLife's expert failed to do." Furthermore, in their objections to the MetLife

56

parties' proposed final judgment, filed a couple of weeks after trial and two months

before the court signed a final judgment, the RSL parties objected that:

> [T]he MetLife Parties failed to segregate fees party by party as to each individual MetLife entity when the stipulated facts showed that the dispute turned on four separate annuities owned by three different individuals, each of which contained different contract language. Distinct MetLife entities issued those annuities and independently sought to enforce anti-assignment, notice, and other provisions that supposedly existed in those separate contracts. Texas law required the MetLife parties to segregate the fees they individually incurred.

We conclude that the RSL parties properly objected based on segregation

before the district court rendered judgment, and they have therefore preserved their

segregation complaint for appellate review. *See Green Int'l*, 951 S.W.2d at 389;

*Donihoo*, 2010 WL 1240970, at *14.

### 3. Sufficiency of the MetLife parties' segregation of attorney's fees

On appeal, the RSL parties argue that Lunceford did not properly segregate

attorney's fees for the MetLife parties, pointing out that Lunceford did not testify

that discrete legal services advanced both recoverable and unrecoverable claims, as

required by *Chapa*. They also argue that Lunceford's segregation methodology did

not take into consideration the RSL parties' tort claims—breach of fiduciary duty

and breach of the duty of good faith and fair dealing—that the MetLife parties had

to defend. Attorney's fees are not recoverable for these tort claims, and Lunceford

did not segregate fees by cause of action or party, nor did she point to discrete fees

on the billing records that were attributable to unrecoverable claims. The RSL parties

argue that these deficiencies are not cured by Lunceford's application of a 15 percent "billing judgment" discount because she did not explain how this specific percentage was connected to unrecoverable fees.

The RSL parties raised tort claims, and while they did not recover on these claims, at least some of the legal services performed by both sides related to these claims. For example, the MetLife parties' July 2022 summary judgment motion contained paragraphs arguing that they were not liable for breach of fiduciary duty or bad faith. Both the Texas Supreme Court and this Court have required segregation of fees when portions of a petition or the jury charge solely related to claims for which fees are not recoverable. *See Chapa*, 212 S.W.3d at 813; *Hannah Reef*, 623 S.W.3d at 873; *see also Clearview Props.*, 287 S.W.3d at 144 (stating that when determining whether segregation is necessary, "we do not look at the legal work as a whole but parse the work into component tasks, such as examining a pleading paragraph by paragraph to determine which ones relate to recoverable claims").

The Texas Supreme Court does not require attorneys to keep separate time records when performing tasks that solely advance claims for which fees are unrecoverable. *See Chapa*, 212 S.W.3d at 314. Instead, it suffices for the attorney to state "that, for example, 95 percent of their drafting time would have been necessary even if there had been no fraud claim." *Id.*; *Kubbernus v. ECAL Partners, Ltd.*, 574 S.W.3d 444, 490 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("[S]egregation

58

is sufficiently established if an attorney testifies that a given percentage of the time worked would have been necessary even if the claim for which attorney's fees are unrecoverable had not been asserted.").

This Court requires attorneys, when giving an opinion on the percentage of work necessary to advance both recoverable and unrecoverable claims, to demonstrate that they took into account the actual work performed in the case. *See United Servs. Auto. Ass'n v. Hayes*, 507 S.W.3d 263, 285 (Tex. App.—Houston [1st Dist.] 2016, pet. granted, judgm't vacated w.r.m.). In *Hayes*, the plaintiffs brought claims for breach of contract and violations of the Insurance Code (for which attorney's fees are recoverable) and claims for common-law fraud and breach of the duty of good faith and fair dealing (for which attorney's fees are not recoverable). *Id.* The plaintiffs were therefore required to either segregate their attorney's fees or demonstrate that segregation was not required because discrete legal services advanced both recoverable and unrecoverable claims. *Id.*

The plaintiffs' attorney testified that he was required to segregate fees for the common-law tort claims, but "because they're so intertwined, the percentage [he] *always* estimate[s] is five percent." *Id.* The attorney did not "testify regarding any of the discrete legal services in [the] case." *Id.* On appeal, we disagreed with the plaintiffs that their attorney opined "that five percent of the attorney's fees were attributable to [their] common law causes of action." *Id.* Instead, the attorney

"testified that he simply 'always' estimates 'five percent,'" and he did not "demonstrate that he took into account any of the actual work performed or the claims made in the [plaintiffs'] case." *Id.* We concluded that the plaintiffs did not properly segregate recoverable and unrecoverable attorney's fees. *Id.*

We reach the same conclusion in this case. Although Lunceford testified that she segregated MetLife's attorney's fees for the interpleader claim from the fees for the declaratory judgment claim, she did not discuss any fees spent solely on defending against the RSL parties' tort claims. After allocating fees among the Individuals, she then applied "a 15 percent billing judgment" discount because she believed such a discount was reasonable and necessary. Lunceford did not provide a rationale for why she chose 15 percent. She did not testify that she chose this number because she believed that 15 percent of the work performed by the MetLife parties' attorneys related solely to unrecoverable claims. She did not testify that she "took into account any of the actual work performed or the claims made" when deciding to apply the 15 percent discount. *See id.*

Without this testimony, we cannot conclude that the MetLife parties properly segregated their recoverable and unrecoverable attorney's fees. Although the MetLife parties did not need to present separate billing records for the unrecoverable fees, they needed to demonstrate that Lunceford considered the actual work performed and the specific claims in the case when applying the 15 percent discount.

*See id.* They did not do so. On this record, we have no evidence before us connecting the discount applied to unrecoverable fees incurred. We therefore conclude that the MetLife parties did not properly segregate their recoverable and unrecoverable attorney's fees.

However, "[u]nsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be." *Chapa*, 212 S.W.3d at 314. The MetLife parties' failure to properly segregate attorney's fees does not mean that they cannot recover any fees for their declaratory judgment claim. Instead, remand is required for the MetLife parties to present evidence of properly segregated attorney's fees for their declaratory judgment claim. *See id.*

We sustain the RSL parties' seventh issue.

## C.     Whether the RSL Parties Properly Segregated Their Attorney's Fees

### 1.     Relevant testimony

Former district court judge Mike O'Brien testified as the attorney's fees expert for the RSL parties. As part of his opinion on recoverable fees, O'Brien separated the fees based on two time periods: (1) fees incurred by the RSL parties up to the time of the 2018 trial in county court; and (2) fees incurred after that point in time.

O'Brien opined that the amount of recoverable attorney's fees for the first period was $435,077.75, which corresponded to the amount of recoverable fees found by the jury in the county court trial. In his original testimony in the county

court trial, O'Brien had stated that the total amount of the RSL parties' reasonable and necessary fees up to that point was $796,000. In the underlying trial, O'Brien weighed whether to adopt the original requested amount or the amount found by the jury in the county court, and he adopted the amount found by the jury, which heard all the evidence in the county court trial. O'Brien did not know how the county court jury arrived at the amount it did.

O'Brien applied a ten percent discount to the amount of requested attorney's fees in the county court. In the county court trial, he was not comfortable with the effort expended to "scrub" the bills, so the ten percent discount helped alleviate that concern. The discount accounted for "human error" in calculating time, and O'Brien believed that a discount "is always appropriate when trying to arrive at what is an appropriate fee."

For the second period, the RSL parties requested $598,661 in attorney's fees. In an exhibit, O'Brien broke down the fees by date and law firm incurring the fees. For example, the RSL parties requested, among other amounts, $88,238 in fees billed by the Feldman Law Firm "from beginning of Dist Ct suit to June 2022" and $282,860 in fees billed by the Feldman Law Firm and Hill & Hill "from July 17, 2018 thru June 2022 [County Court]."[12] O'Brien testified that the RSL parties' total

---

[12] On cross-examination, O'Brien agreed that the $282,860 amount included attorney's fees spent on the second appeal to the Fourteenth Court of Appeals. He further testified that the amount sought in the county court trial included "half of the

amount of recoverable fees "for the handling of all the various matters in this case" was $1,034,567.14.

O'Brien specifically addressed whether segregation was necessary, and he testified:

> There was no obligation to segregate amongst the Plaintiffs or the Defendants. The Defendants here, because we had different MetLife entities, there was also no duty to segregate between causes of action because all of them really emanate out of the underlying contractual documents that you spent a lot of [time] trying to analyze already.
>
> So unlike many cases where there's a—one illustration, employment agreement scenario. It also has a breach of fiduciary duty component because of who the parties were. And oftentimes that tort cause of action plays a significant part of the ultimate resolution of the case.
>
> Here, while I understand there was an assignment of a breach of fiduciary duty cause of action, they don't stand in those shoes without that, the case is really a breach of contract dec action about what the documents mean. Always has been, always will be. Dress it up with a few things.
>
> So the—all the legal work I saw, irrespective of the breach of fiduciary duty, irrespective of the fact that one of the annuitants, as I understand it, is no longer viable, the work would have been the same—because the—it all relegated back to the very principles that started this thing as you see in Exhibit 51.[13]

---

[first] appeal" relating to arbitration because that appeal "involved some considerations that were specific to the annuities."

[13] Exhibit 51 is an email memorandum from Stewart Feldman at RSL Funding to one of the MetLife parties' attorneys in September 2011 explaining the RSL parties' rationale for pursuing the litigation.

O'Brien also addressed segregation on cross-examination, stating, "My opinion is that there is no requirement for segregation under the facts of this case."[14] He acknowledged that the district court had made rulings concerning the specific annuities, and he testified that based on his understanding of the case, "there was never this parsing of the parties"; instead, "[i]t was always about the underlying transaction where [the MetLife parties] needed to respect the fact that there was this assignment, and that RSL now had the ownership rights."

During the district court's oral rulings at the close of trial, the court awarded the RSL parties attorney's fees but stated that it was "not awarding anything with regard to the first trial or before that" because O'Brien "did not segregate those fees out appropriately for me . . . the fees that were associated with the dec action versus the other issues going on with the first trial." The court also did not award the RSL parties "anything for the appellate loss." In the final judgment, the amount of fees awarded to the RSL parties was offset against the amount of fees awarded to the MetLife parties, with the ultimate result that the RSL parties did not recover any attorney's fees.

---

[14] During Lunceford's testimony, the MetLife parties asked whether she believed the amount of attorney's fees sought by the RSL parties were reasonable and necessary. As part of her rationale for why that amount was not reasonable and necessary, she discussed the RSL parties' failure to segregate "by the person you're working for," failure to segregate fees allocated to each annuity, and general failure to segregate recoverable from unrecoverable fees, including fees for the appeals that the RSL parties had lost.

**2. Sufficiency of the RSL parties' segregation of attorney's fees**

On appeal, the RSL parties challenge the district court's decision not to award them any attorney's fees for time up to the county court trial because O'Brien's testimony provided evidence of segregated fees. They argue that the court "made clear its ruling for awarding no fees," citing the court's oral statement at the close of trial when it awarded fees to the RSL parties.

First, we note that the district court did not file any findings of fact and conclusions of law in this case. We are "not entitled to look to any comments that the judge may have made at the conclusion of a bench trial as being a substitute for findings of fact and conclusions of law." *In re W.E.R.*, 669 S.W.2d 716, 716 (Tex. 1984) (per curiam); *Tamuno Ifiesimama v. Haile*, 522 S.W.3d 675, 684 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("A trial court's oral statements at trial are not findings of fact or conclusions of law."). "Statements made by a trial court outside of properly filed written findings and conclusions do not limit an appellate court's review." *Haile*, 522 S.W.3d at 684 (quoting *Larry F. Smith, Inc. v. Weber Co.*, 110 S.W.3d 611, 615 (Tex. App.—Dallas 2003, pet. denied)). Thus, the district court's oral statement at the close of trial that it was "not awarding anything with regard to the first trial or before that" because O'Brien "did not segregate those fees out appropriately for me . . . the fees that were associated with the dec action versus the other issues going on with the first trial" does not substitute for a written finding of

fact, and we may uphold the district court's ruling on any legal theory supported by the evidence. *See In re W.E.R.*, 669 S.W.2d at 717.

Second, although the RSL parties characterize this as a "zero fee award," the record does not support this characterization. Although the district court did not award the RSL parties the full amount that it sought in attorney's fees— $1,034,567.14—the court did not award nothing to the RSL parties. Rather, it awarded $351,299.25 in reasonable and necessary attorney's fees "in connection with the declaratory judgment claims," but this amount was offset against the greater award of attorney's fees to the MetLife parties. The district court had broad discretion in awarding attorney's fees under the DJA, and it could have permissibly concluded that awarding the full amount sought by the RSL parties would not be equitable and just. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) ("Unreasonable fees cannot be awarded, even if the court believed them just, but the court may conclude that it is not equitable or just to award even reasonable and necessary fees.").

We conclude that the RSL parties have not demonstrated that the district court abused its discretion in its award of their attorney's fees.

We overrule the RSL parties' eighth issue.[15]

---

[15] Because we have held that the district court erred by awarding attorney's fees to the MetLife parties on their declaratory judgment claim due to their failure to properly segregate recoverable and unrecoverable fees, a resolution that requires remand of

## Conclusion

We modify the portion of the district court's judgment to delete the award of $34,194.69 in attorney's fees to the MetLife parties on their interpleader claim. We reverse the portion of the district court's judgment that awards attorney's fees to the MetLife parties on the declaratory judgment claims, and we remand this issue for further proceedings. We affirm the remainder of the district court's judgment as modified.

David Gunn
Justice

Panel consists of Chief Justice Adams and Justices Rivas-Molloy and Gunn.

---

the fee award, we need not address the RSL parties' ninth issue relating to itsthe trial court's ruling holding all three RSL parties jointly and severally liable for the MetLife parties' attorney's fees. Similarly, we need not address the portion of the RSL parties' sixth issue in which they argue that the MetLife parties' conduct that prevented them from being "innocent and disinterested stakeholders" entitled to attorney's fees on their interpleader claim should preclude them from recovering attorney's fees under the "equitable and just" standard of the DJA.